OPINION OF THE COURT
Marcy L. Kahn, J.
This case raises apparent conflicts between the rights of a *18 criminal defendant to due process and confrontation of witnesses, on the one hand, and the rights of an alleged victim of domestic abuse to maintain the confidentiality of the records of her mental health treatment, on the other.
Defendant is charged with attempted assault in the third degree (Penal Law §§ 110.00, 120.00), criminal contempt in the second degree (Penal Law § 215.50), petit larceny (Penal Law § 155.25) and harassment (Penal Law § 240.25) based upon an incident involving himself and the mother of his children on March 18, 1990. Prior to trial, the People moved in limine for a protective order[1] with respect to hospital records of the complaining witness’ psychiatric treatment on the ground that they did not constitute Brady material. (Brady v Maryland, 373 US 83 [1963].) A hearing was conducted by this court, the records were reviewed in camera, and a protective order was issued. This decision sets forth the court’s reasons for issuing that order.
PROCEDURAL BACKGROUND
In the course of routine trial preparation in an assault case, the Assistant District Attorney assigned to the case served a subpoena duces tecum on the Presbyterian Hospital (the Hospital) for all of the complainant’s medical records subsequent to the March 18th incident. The prosecutor thereby assumed that he would receive all records relating to complaining witness’ treatment for injuries allegedly received during the assault.
Subsequently, the Assistant District Attorney received the postincident medical records which he had subpoenaed from the Hospital. These records related to treatment received by the complainant at the Hospital from March 22, 1990 through March 25, 1990, all of which was psychiatric in nature. The Assistant then met with the complainant and, using the services of a Spanish language interpreter, discussed these records and complainant’s medical history with her. She told him that she wished to maintain the confidentiality of these *19 records, and that she especially did not want her estranged husband (i.e., defendant) to have access to them.
Thereafter, when the case was called for trial before this court, the Assistant District Attorney informed the court and counsel that his efforts to meet his discovery obligations by providing to the defense medical records reflecting complainant’s injuries from the defendant’s alleged attack on her had produced only hospital records reflecting psychiatric treatment received by the complainant at the Hospital several days later. The Assistant stated that the complainant had not received medical treatment for any physical injuries sustained during the incident.
Acknowledging that the records suggested that the complainant had a psychiatric history, the People opposed (with one minor exception) their inspection by the defense. The People argued that these records were confidential, and contained nothing of an exculpatory nature which would qualify for production under Brady v Maryland (supra), nor any information which would be discoverable under CPL 240.20. The Assistant District Attorney requested that the court conduct an in camera review of the records and, except for certain statements which the People conceded should be furnished to the defense pursuant to People v Rosario (9 NY2d 286 [1961]), asked the court to issue a protective order precluding the discovery of the records by the defense.
The defense opposed the People’s application in all respects. Defendant argued that complainant’s postincident psychiatric records in the People’s possession were the subject of a proper discovery request made by defendant, and that because they could reflect on complainant’s mental state and credibility, they should be produced to the defense as Brady material. Specifically, the defense noted that its demand for discovery included a particularized request pursuant to CPL 240.20 (1) (h) and Brady v Maryland (supra) for: "information favorable to defendant which may in any way support a theory of defense or reflect adversely on the credibility of People’s witnesses[,] including but not limited to any and all history of * * * psychiatric treatment of all prosecution witnesses, including the complainant.” Arguing that complainant’s psychiatric history bears on her state of mind at the time of the incident, as well as on her general credibility, and because she would be the principal witness for the prosecution at trial, the defense maintained that the records of complainant’s psychiatric treatment should be disclosed pursuant to Brady. Finally, *20 defendant contended that the inspection of the records should be conducted by counsel for the defendant, not by the court.
The People replied that these records provide no evidence that the complaining witness has (or ever has had) any impairment of her perception, memory or communications abilities; that they do not suggest that she was experiencing hallucinations or delusions; and that the records could in no sense be viewed as providing evidence favorable to the defense. Additionally, the prosecution maintained that due to their confidential and highly sensitive nature, disclosure of the records would amount to an unwarranted intrusion by the defense into a very personal aspect of the complainant’s life.
THE BRADY-VILARDI STANDARD
Due process places upon the prosecution a continuing duty to disclose to the defense evidence which is both favorable to the defense and material to either guilt or punishment. (Brady v Maryland, supra; People v Vilardi, 76 NY2d 67 [1990]; People v Cwikla, 46 NY2d 434 [1979].) Where the evidence is not favorable to the defense, production is not required. And even where the undisclosed evidence is favorable to the defense, a due process violation will be found only if the suppressed evidence is material to the issues in the case. (See, Pennsylvania v Ritchie, 480 US 39, 57 [1987]; United States v Agurs, 427 US 97 [1976]; People v Vilardi, supra, at 77.) Accordingly, the questions before the court are whether or not these records are discoverable by the defense as being both "favorable” and "material” for Brady purposes.
To be favorable, the evidence must "tend to exculpate” the defendant. (Brady v Maryland, 373 US, supra, at 88.) Where a witness’ reliability may be determinative of guilt or innocence, material evidence affecting that witness’ credibility constitutes exculpatory evidence. (Giglio v United States, 405 US 150, 154 [1972] [jury should have been told of Government’s nonprosecution agreement with unindicted coconspirator who was government’s key witness]; People v Cwikla, supra, at 441 [undisclosed cooperation agreement between prosecution and a key witness that his testimony against the defendant would be communicated to the Parole Board]; cf., People v Fappiano, 134 Misc 2d 693 [Sup Ct, Kings County 1987], affd 139 AD2d 524 [2d Dept 1988], lv denied 72 NY2d 918 [1988] [evidence of complainant’s chronic alcoholism not material or "favorable” to defendant, absent evidence that the condition caused some *21 degree of mental impairment of the witness’ sensory capacity (e.g., hallucinations, blackouts, etc.) at the time of the events in question].)
The psychiatric history of a prime prosecution witness may very well be considered evidence affecting the witness’ credibility in a manner favorable to the defense. (See, e.g., People v Rensing, 14 NY2d 210 [1964]; People v Maynard, 80 Misc 2d 279 [Sup Ct, NY County 1974]; see also, People v Dudley, 167 AD2d 317 [1st Dept 1990] [issue raised in confrontation context].) The more difficult question is whether evidence respecting a witness’ psychiatric history is both "favorable” and "material” for Brady purposes in a particular case.
In its most recent explanation of Brady materiality, the Court of Appeals held that where a prosecutor is made aware by a specific discovery request that the defense considers certain evidence important, the defense need only demonstrate the existence of a " 'reasonable possibility’ ” that a failure to provide the evidence could contribute to the conviction of the defendant or change the outcome of the case in order to establish that the demanded evidence is material. (People v Vilardi, supra, at 77.)
Vilardi (supra) involved a charge of arson by explosion, and the defendant had specifically requested disclosure of the reports of police experts, in order to show that no explosion occurred. One such report, which discounted any explosion theory, was withheld from the defense. The Court of Appeals, applying the "reasonable possibility” standard, found that the missing report was both exculpatory and material to the issue of the defendant’s guilt and should have been disclosed.
In adopting the reasonable possibility standard as a matter of State constitutional law, the majority opinion focused principally on the dereliction of duty of the prosecutor, and the need to deter it. The Court of Appeals repeatedly emphasized that a prosecutor’s failure to respond to a specific request for such evidence is " 'seldom, if ever, excusable’ ”. (76 NY2d, supra, at 82 [Simons, J., concurring]; see, supra, at 74, 76, 77, citing United States v Agurs, 427 US 97, 106 [1976], supra; People v Brown, 67 NY2d 555, 559 [1986]; People v Cwikla, 46 NY2d, supra, at 441-442.) The majority reasoned that where the defense has put the prosecutor on notice by requesting particular items, it is preferable to make the standard of materiality more favorable to the accused, and the corresponding duty on the prosecutor of greater magnitude, than would *22 obtain where the defense has made either a general demand for exculpatory evidence or no demand at all. (See, People v Chin, 67 NY2d 22 [1986] [holding that in the absence of a specific demand, a due process violation would be found only if there were a reasonable probability that had the evidence been disclosed, the result would have been different].) The Vilardi court stressed that its primary rationale for so doing was that any failure to disclose in the face of a specific request is more serious in its potential to undermine the fairness of the trial, and the reasonable possibility standard encourages prosecutors to comply with their obligations. (76 NY2d, supra, at 75-77.)[2]
Here, of course, the prosecution has clearly fulfilled its obligation to respond by presenting the evidence within its control to the court and requesting a ruling as to materiality. This court’s judgment as to materiality will thus have nothing to do with the need to punish prosecutorial misconduct; it will have to be based entirely upon " 'the character of the evidence, not the character of the prosecutor’ ”. (People v Vilardi, supra, at 82 [Simons, J., concurring], quoting United States v Agurs, supra, at 110.)
Brady analyses are most often undertaken retrospectively by appellate courts, which can make fact-specific judgments as to whether, upon a given trial record, there existed a reasonable possibility that the failure to provide the evidence contributed to the conviction of the defendant or could have changed the outcome of the case. This court, by contrast, must make its materiality determination without knowing what evidence will ultimately be adduced at trial.
Because of the potential privileged and confidential nature of these records, the physician-patient privilege (CPLR 4504) and section 33.13 of the Mental Hygiene Law,[3] and bearing in *23 mind the reasonable possibility standard of Vilardi (supra), applicable here because of the specific request made for these records by the defense, this court has reviewed in camera the records relating to the psychiatric treatment received by the complainant several days after the events at issue in this case.[4]
There is no mention in these records of the March 18th incident, nor is there any discussion of the defendant’s involvement in it, save for the two potential Rosario statements which the People concede they must provide. Neither is there any discussion of any injury, physical or emotional, sustained as a result of this incident. The records are devoid of any direct evidence tending to exculpate the defendant, using the reasonable possibility standard.
With respect to material information bearing on the complainant’s credibility, I believe the most helpful approach is that articulated by the Court of Appeals in People v Gissendanner (48 NY2d 543 [1979]). Although not specifically discussing Brady issues, the court there set forth parameters of materiality of impeachment evidence where a defendant was seeking to subpoena records which were confidential to a prosecution witness. In Gissendanner, the Court of Appeals clearly distinguished between impeachment evidence which is material to guilt or innocence and must, even if confidential, be disclosed, and impeachment evidence which is collateral and which, if privileged, need not be disclosed: "[T]hough access must be afforded to otherwise confidential data relevant and material to the determination of guilt or innocence, as, for example, when a request for access is directed toward revealing specific 'biases, prejudices or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand’ (Davis v Alaska, supra, at p 316), or when it involves other information which, if known to the trier of fact, could very well affect the outcome of the trial * * * there is no such compulsion when requests to examine records are motivated by nothing more than impeachment of witnesses’ general credibility. In such cases, the defendant’s rights have generally been canalized within the bounds of the traditional *24 evidentiary rule that governs the introduction of extrinsic proof of matters collateral to the issues at trial, i.e., its availability rests largely on the exercise of a sound discretion by the trial court”. (People v Gissendanner, 48 NY2d, supra, at 548.)
Also instructive in this connection is People v Freeland (36 NY2d 518 [1975]). There Chief Judge Breitel, writing for a unanimous court, held that hospital records of a witness’ heroin addiction would not be inadmissible under the collateral evidence rule if they had some bearing on the witness’ testimonial capacity: "Generally, evidence of narcotic addiction is admissible to impeach a witness’ credibility if tending to show that she was under the influence of drugs while testifying, or at the time of the events to which she testified, or that her powers of perception or recollection, were actually impaired by the habit [citations omitted]. In such instances the collateral evidence rule is not applicable.” (36 NY2d, supra, at 525.)
Applying the standards set forth in Gissendanner (supra) and Freeland (supra) to determine the Brady-Vilardi materiality of the first batch of records, the court’s examination of the records should focus on whether the records contain information which could possibly bear on the complainant’s ability to perceive or recall the events of March 18th; information possibly demonstrating the complainant’s bias or hostility; evidence of a possible motive to fabricate; or other information which, if known to the trier of fact, could possibly affect the outcome of the trial.
Careful examination of these records discloses nothing which suggests any impairment of the complainant’s memory, perception or ability to communicate in connection with the condition for which she received treatment. There is no indication here that the complainant suffered from delusions, hallucinations, loosening of associations, lapse of memory or any other condition, at the time of the incident or during her ensuing hospitalization (or at any subsequent time), such that her ability to perceive, recall or communicate at these times might be impaired. (See, People v Fappiano, 134 Misc 2d 693, supra; People v Walker, 116 AD2d 948 [3d Dept], lv denied 67 NY2d 952 [1986] [no error in denying admission of witness’ hospital records for treatment of ongoing mental illness where there was no indication of any permanent mental impairment of the witness at the time of his testimony]; cf., e.g., People v Freeland, supra [hospital record of heroin addiction admissible *25 where case rested almost entirely on testimony of the single eyewitness, antecedent identification procedures had been troublesome, and where record established that eyewitness’ treatment records bore on witness’ ability to perceive people and events at the time of the crime]; People v Rivera, 138 AD2d 169 [1st Dept 1988], lv denied 72 NY2d 923 [1988] [error under Brady to deny defense request for homicide victim’s psychiatric records where records evidenced history of psychosis, homicidal ideation and violent and assaultive behavior and where defense was justification]; People v Dudley, supra [where the sole eyewitness to a crime between strangers had been hospitalized for psychiatric treatment for auditory hallucinations a month prior to the incident and at the time of the crime had been en route to the hospital due to his need for immediate treatment for anxiety, evidence of his psychiatric treatment bore upon the witness’ capacity to testify].)
Neither do these records provide any evidence of an interest or motive on the complainant’s part to falsify her report of the incident (see, Davis v Alaska, 415 US 308, 316-317 [1974], supra; People v Cwikla, supra), nor do they offer any suggestion that the complainant harbors any bias against the defendant. (See, People v Gissendanner, supra, at 548 [1979], citing Davis v Alaska, 415 US, supra, at 316.)
Finally, and significantly, due to the parties’ previous relationship, this is not a case in which the witness’ history of psychiatric treatment is unknown to the defendant at the time of trial. (See, People v Mandel, 48 NY2d 952, 954 [1979], cert denied 446 US 949 [1980] [no error to exclude hospital records of witness’ treatment for mental illness where materiality not shown and where other evidence of witness’ mental condition was admitted]; cf., People v Rensing, 14 NY2d 210 [1964], supra; People v Maynard, 80 Misc 2d 279 [Sup Ct, NY County 1974].)
In sum, this court has found nothing in these records which, if known to the trier of fact, could reasonably be said to affect the outcome of the trial in a manner favorable to the defense.
Defendant has failed to meet even the minimal burden imposed on him under Vilardi (supra) of demonstrating that these records might possibly affect the outcome of his case. These records do not contain any material evidence which tends to exculpate the defendant, either directly, or by providing material evidence tending to undermine the credibility of the complainant. Under these circumstances, an in camera *26 review of the records by the court is the most the defendant can expect to achieve. (Pennsylvania v Ritchie, 480 US, supra, at 58, n 15; People v Gissendanner, 48 NY2d, supra, at 549-550, 551 [1979]; People v Ortiz, 127 AD2d 305 [3d Dept 1987], supra, lv denied 70 NY2d 652 [1987].)
Accordingly, save for the two Rosario statements previously noted, these records are not subject to disclosure pursuant to CPL 240.20 (1) (h) and Brady v Maryland (373 US 83, supra). The People’s motion for a protective order with the exception of said Rosario material, which the People are directed to turn over to the defense, is granted.
[Portions of opinion omitted for purposes of publication.]

. The defense contends that the prosecutor’s application should not be viewed as a motion for a protective order because it was not made on notice on written papers. It is clear, however, that CPL 240.50 permits a court on its own initiative at any time to issue a protective order regulating discovery for good cause shown. (See also, CPLR 3103; Siegel, NY Prac, § 353, at 439 [1978 ed].) Despite the prosecutor’s failure to couch his request in CPL 240.50 terms, his application for an order limiting discovery has been treated as one for a protective order.

. Of course, a further rationale for this lesser standard in specific request cases, barely noted by the majority in Vilardi (supra), is that the burden on the prosecutor to ferret out exculpatory evidence reposed within the People’s files is much less onerous where the defense has specified the item which is demanded. (See, 76 NY2d, supra, at 75.)

. Mental Hygiene Law § 33.13 (c) (1) protects the confidentiality of the treatment records of patients receiving psychiatric care in any facility which provides services to the mentally ill, mentally retarded or developmentally disabled, and restricts to certain specific instances the release or disclosure of clinical records or patient-identifying information in instances where the patient’s consent has not been obtained. (Mental Hygiene Law § 33.13 [c], [e].) Discussion of these issues has been omitted for purposes of publication.

. There is no merit to defendant’s argument that the defense rather than the court should conduct a review of the prosecutor’s file for potential Brady material. (Pennsylvania v Ritchie, 480 US, supra, at 59-60; People v Ortiz, 127 AD2d 305 [3d Dept 1987]; People v Chambers, 134 Misc 2d 688 [Sup Ct, NY County 1987]; see also, People v Poole, 48 NY2d 144, 148 [1979] [Rosario material].)