OPINION OF THE COURT
Herbert I. Altman, J.
Defendants Lamar Sanchez and Jose Rodriguez move to dismiss the indictment against them on the ground, inter alla, that they were not afforded a meaningful opportunity to testify before the Grand Jury.
Defendants are among the first individuals to be charged under New York’s capital murder statute (Penal Law § 125.27). The People contend that on October 20, 1995 defendants entered an apartment at 631 West 152nd Street, murdered 18-year-old Arelis Batista, her 14-year-old brother William, and her mother and then stole the family’s $20,000 life savings.
Defendants were arraigned in Criminal Court on October 24, 1995. At about that time the People served notice of their intention to seek an indictment for murder in the first degree. Defendants, in turn, served notice requesting to appear before the Grand Jury (CPL 190.50 [5] [a]). On October 26, 1995 each defendant requested copies of the extensive statements he and his codefendant had given to the police following the arrest. At that time counsel for defendant Sanchez stated the reason advanced by each defendant for the request: "I have sought those statements so that we can make a more intelligent determination as to whether our client should testify before the grand jury or the potential proffer of exculpatory evidence.”
As the People did not voluntarily comply with this request, or for those defendants made for what they denominated as Brady material and for legal rulings and instructions they wanted given to the Grand Jury, defendants made formal ap *222 plication for the same relief. They also sought a delay in the Grand Jury presentation in the hope of "generating] exculpatory material”, indicating that they were willing to waive their rights under CPL 180.80 for as long as was necessary to complete their investigations. The People had by then already presented their evidence to the Grand Jury. As the Grand Jury’s term was to expire on November 3, the People opposed this application as well.
I denied defendants’ application for a stay on the ground that it was based on nothing more than the hope that something useful to them would turn up. I declined to order the People to instruct the Grand Jury in any particular manner, but stated that I would review the instructions given to the Grand Jury upon a motion to inspect the minutes of the proceedings. After reading defendants’ statements, I denied the application for their discovery on the ground that the new law did not envision a divergence in present practice with regard to Grand Jury proceedings or as to discovery schedules, nor did I believe there was any due process right which required that the statements be turned over prior to the presentation. Subsequent to my ruling defendant Rodriguez withdrew cross Grand Jury notice. Counsel for defendant Sanchez informed the People that he would not permit his client to testify, but that he was not withdrawing notice. This indictment then followed.
Defendants now move to dismiss the indictment pursuant to CPL 190.50 on these same and related grounds. They argue that the People’s refusal to comply with their discovery requests and with their application for a stay of the proceedings effectively denied them the right to testify as guaranteed by the statute. They also contend that, as their attorneys were denied access to their statements, they were denied the right to the effective assistance of counsel.
At the core of many arguments presented by defendants is their oft-repeated thesis that those who are charged with capital offenses are deserving of "heightened due process” at every stage of the proceeding against them. This premise finds no support in either Federal or State case law. The Supreme Court has recognized no more than that "the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination * * * the Court’s principal concern has been more with the procedure by which the State imposes the death sentence * * * once it has been determined that the defendant *223 falls within the category of persons eligible for the death penalty” (California v Ramos, 463 US 992, 998-999 [underscore added]).
Stricter scrutiny of a capital case is, thus, limited to the penalty phase of the proceeding. Additionally, nowhere has this greater scrutiny been equated with "heightened due process.” The concept is also alien to the case law of this jurisdiction, however much defendants would have it otherwise. Defendants are incorrect in arguing that People v Johnson (69 NY2d 339) stands for the proposition that a defendant facing the death penalty is deserving of other than "ordinary” due process. That is not to say that these defendants do not enjoy every constitutional protection, only that there are no due process protections peculiar to them which are unavailable to others. The Constitution does not require that they be exempted from any provision of the Criminal Procedure Law so long as it otherwise complies with due process, merely because they may ultimately be found to be subject to the death penalty.
The contention that dismissal of the indictment is required because defendants were not granted a stay of the Grand Jury presentation is without merit. They were afforded a full and meaningful opportunity to testify. The People made provision with the Department of Correction for defendants to be produced before the Grand Jury on November 2, 1995. Defendants, thus, had more than a week in which to decide whether to testify. They, nevertheless, argue that due process and other considerations required that they be afforded more time.
Defendant Sanchez argues that the failure to grant a stay of the presentation deprived him of the opportunity to present mitigating evidence on the issue whether he should be charged with murder in the first degree. His logic is as follows: A Grand Jury has the power to indict for a lesser offense though evidence sufficient to support a greater one may have been presented to it (People v Sullivan, 68 NY2d 495; Vasquez v Hillery, 474 US 254, 263). This power is akin to that exercised by a sentencing jury in a capital case in choosing to sentence a death-eligible defendant to a sentence lesser than death. Defendant has a constitutional right to present evidence which may sway the sentencing jury on this issue (Eddings v Oklahoma, 455 US 104). Since he also has a right to have evidence which would constitute a complete defense to prosecution presented to the Grand Jury (People v Valles, 62 NY2d 36), and mitigating evidence may be a complete defense to the death *224 penalty, one whom the Grand Jury may charge with a capital offense must necessarily be permitted to present mitigating evidence to that body. Defendant Sanchez contends that he was deprived of this right because he was not given an extended opportunity in which to "investigate, prepare and present evidence either exculpatory as to the capital charge or mitigating with regard to the jury’s ultimate charging decision.”
Although an individual must be given a meaningful opportunity to testify before the Grand Jury (see, People v Oquendo, 172 AD2d 566; People v Greenfield, 178 AD2d 653), and mere technical compliance with the statute may not always suffice (People v Martinez, 111 Misc 2d 67), there is no authority for the proposition that a stay must be granted to defendants who claim only that, if one were granted them, something useful might turn up. Defendants sought an indefinite and open-ended adjournment to complete their investigation, but never suggested what, if anything, they believed they would discover if additional time were granted them. In view of the fact that the end of the Grand Jury’s term was imminent, and that granting the application would necessitate extending the term of the Grand Jury indefinitely or require a completely new presentation, affording defendants more time with which to pursue an investigation they could not justify was not reasonable. I note that defendants have had more than a month since that time, during which, judging by the many subpoenas I have "so ordered”, they have pursued their investigation. Not only does it appear that their request at the time rested only on the hope that, given more time, they might be able to "generate” something useful, but additional time having passed, they still do not identify any witness they would have petitioned the People to interview or any facts they would have incorporated into their statements had they only been aware of them prior to testifying. It therefore appears that they were not prejudiced by the denial of an open-ended delay of the Grand Jury proceeding.
There is no merit to the contention of defendant Sanchez that he was entitled to present evidence of mitigation to the Grand Jury. Neither the Eighth Amendment of the United States Constitution nor New York case law permits a defendant to present evidence which bears solely on the issue of mitigation. Even the People’s obligation to present Brady or exculpatory material to the Grand Jury is limited (see, People v Lancaster, 69 NY2d 20; People v Mitchell, 82 NY2d 509). Although defendant has a right to testify as to his culpability, or *225 lack thereof, the question of mitigation of punishment is not an issue which may be properly presented to the Grand Jury.
There may be similarities in the decision-making process between the Grand Jury’s decision to indict an individual for a capital offense and the sentencing jury’s decision to sentence an already convicted defendant to the death penalty, but the functions of these bodies and their determinations are different. The determination of punishment is not a function of the Grand Jury. Rather, it is "to investigate crimes and determine whether there exists sufficient evidence and a legal reason to believe that a citizen should stand publicly accused of a crime and be subjected to the task of defending against the accusations at trial” (People v Franco, 86 NY2d 493, 499). That the outcome of the Grand Jury’s vote may, in fact, be the first step in a series of determinations, the last of which may be to decide whether the defendant should be sentenced to death (see, Vasquez v Hillery, supra, at 263) does not change the fact that the Grand Jury is only concerned with culpability (CPL 190.65 [1]).
A Grand Jury’s vote to charge a defendant with a capital offense does not mean that he will be sentenced to death. Before a sentencing jury makes that decision at least two other intervening and independent ones must also be made. The District Attorney must decide to seek the death penalty and a jury must find the defendant guilty of murder in the first degree. Factors bearing on mitigation of sentence are relevant only in the sentencing stage of the proceeding (CPL 400.27 [9]). Not only does the Criminal Procedure Law not provide a mechanism by which a defendant may present evidence to the Grand Jury with respect only to punishment, it would be premature and improper for defendant so to do. The Eighth and Fourteenth Amendments require only that "the sentencer * * * not be precluded from considering * * * mitigating factor[s]” (Lockett v Ohio, 438 US 586, 604 [underscore added]).
Defendants contend that, as capital cases are legally complex, and this is the first prosecution under the new law in this county, they should be afforded extra time in which to do legal research. This argument is not compelling. Any new law requires fresh thought and analysis. Neither fairness nor due process are violated by requiring litigants to adhere to the time restrictions present in other cases (although such limitations were substantially lengthened here). Moreover, defendants point to no concrete prejudice. They have had the benefit of an additional month for their research, but do not indicate *226 what legal issues they have since developed which are no longer available to them. Defendants may still argue upon a motion to inspect the Grand Jury minutes that the presentation was legally infirm. The mere fact that a time frame shorter than that which they would have preferred impacted upon their ability to formulate an optimal strategy, or hastened their decision whether to testify, does not rise to the level of a failure to afford them due process.
Another argument raised is that, as neither counsel was in possession of the statements made by the defendants to the police, it was impossible to make an informed decision as to the advisability of having them testify in the Grand Jury. Counsel, it is asserted, were also unable to prepare defendants for questioning by the Grand Jury as to those statements, and, as a result, they were denied the effective assistance of counsel. A related claim is that an individual cannot knowingly exercise his right to testify in the Grand Jury unless he is fully aware of the statements he and his codefendant gave to the police. They argue that the denial of their access to such statements and to Brady material prior to indictment effectively precluded them from presenting exculpatory material to the Grand Jury in violation of their rights.
I reject the argument that the indictment must be dismissed for failure to turn over Brady material. As noted, the People’s duty to present exculpatory material in the Grand Jury is limited (People v Lancaster, supra). I note also that the People deny being in possession of Brady material. As for defendants’ statements, they are of an inculpatory, not exculpatory, nature. Defendants, on oral argument prior to indictment, made the strained argument that their statements to the police constitute Brady material on the theory that, as reported in the press, the statements recount that they were initially solicited to commit a murder by Arelis Batista, whom they ultimately killed. Thus, the argument proceeds, they are not guilty of those counts charging them with the crime of murder in the first degree under Penal Law § 125.27 (1) (a) (vii), (viii). A statutory element of each of these subsections is that the victim not be a participant in the crime.
These statements can be said to be Brady material only by tortured logic. Arelis Batista may have inveigled defendants to murder her father and steal his money, but she was not a participant in the crimes ultimately committed, as she did not solicit her own murder or those of the other victims. To the extent that such statements are Brady material, they, in fact, *227 were already known to defendants, as they brought them to my attention. Defendants may still argue upon a motion to inspect the Grand Jury minutes that the presentation was compromised by failure to turn over such "exculpatory material” or that the evidence does not support some of the charges in that Arelis Batista was a participant in the crime.
Defendants’ position that the People were required to turn over their statements to the police prior to their testifying in the Grand Jury is not the law. "Discovery in a criminal proceeding is entirely governed by statute” (Matter of Hynes v Cirigliano, 180 AD2d 659). As CPL 240.20 provides that the prosecutor turn over a defendant’s statements only to one "against whom an indictment, superior court information, prosecutor’s information, information, or simplified information * * * is pending”, defendants are not entitled to discovery of their statements prior to testifying in the Grand Jury (see, Matter of Hynes v Cirigliano, supra). Even though the Legislature changed many statutory provisions when it enacted capital punishment, its choice to leave the discovery statute unaltered is a clear indication that the existing rule is operative in capital cases. As previously discussed, no "heightened due process” requirement mandates otherwise.
The papers submitted rebut the defendants’ claim that other persons similarly situated and charged with heinous crimes have been treated more favorably than they. There is also no basis to the claim that the defendants did not have timely or adequate notice of the severity of the charges against them. They were aware from the date of their arraignment that the People would be seeking an indictment charging them with murder in the first degree.
Defendants argue that they should have been informed of the theory under which the People were proceeding in the Grand Jury and the specific acts forming the basis of the charges against them. The People were under no obligation to reveal the theory or strength of their case, or for that matter, to reveal in advance the instructions they would be giving the Grand Jury. Similarly, defendants were not entitled to evidentiary rulings concerning what evidence the Grand Jury could or could not hear. Again, defendants show no reason why the provisions of the Criminal Procedure Law as it relates to discovery or to Grand Jury practice should be altered for their benefit. The remaining arguments relate to the failure of the *228 People to instruct the Grand Jury as to certain principles of law. These will be considered in conjunction with defendants’ anticipated motion to inspect the Grand Jury minutes. Accordingly, the motions to dismiss are denied.