OPINION OF THE COURT
Arthur G. Pitts, J.
Defendant Robert Shulman is charged by indictment number 1112-96 with one count of murder in the first degree in violation of Penal Law § 125.27 (1) (a) (xi) and four counts of murder in the second degree. The first three counts, including the first degree murder charge, allege the murder of one Kelly Sue Bunting. The remaining counts allege the murder of an unidentified female, to whom the indictment refers as "Jane Doe”. The People have noticed their intention to seek the death penalty in the event defendant is convicted of first degree murder.
Defendant now makes the instant omnibus motion seeking various items of reliéf. The People oppose the motion. Memoranda of law have been submitted for and against. After due consideration, the motion is determined as follows:
A. Grand Jury Proceedings
Defendant requests that the court, pursuant to CPL 210.30 (2), inspect the Grand Jury minutes and dismiss the indictment for legal insufficiency of the evidence presented to the Grand Jury; that the court release the Grand Jury minutes pursuant to CPL 210.30 (3); that the People be compelled to disclose certain information pertaining to the Grand Jury proceedings by answering 65 interrogatories; and that the indictment be dismissed pursuant to CPL 210.35 as the evidence before the Grand Jury included privileged, and therefore inadmissible, matter.
This court has conducted an in camera examination of the minutes of the Grand Jury proceedings. Based upon such examination, this court finds that the evidence submitted to the Grand Jury is legally sufficient to support the counts in the indictment. (See, People v Maier, 72 AD2d 754 [2d Dept 1979].) Moreover, the legal instructions to the Grand Jury were properly recorded and legally sufficient. (See, People v Calbud, Inc., 49 NY2d 389 [1980].)
The court finds further that release of the minutes is unnecessary to assist it in making its determination (see, CPL 210.30 [2], [3]). While defendant reminds the court that defendant is the first individual in the County of Suffolk against whom the death penalty is sought, it is to be stressed that *537 there is no basis in this fact alone for the relief defendant seeks (see, People v Chinn, NYLJ, Nov. 19, 1996, at 31, col 3 [Onondaga County Ct, Mulroy, J.]).
Moreover, defendant states no basis, factual, statutory or otherwise, to require the People to respond to his interrogatories. These seek varied information, including whether expert witnesses testified or expert’s reports were submitted for the grand jurors’ consideration, information as to grand juror attendance and the presence of other "persons” during the proceedings. However, the proceedings of the Grand Jury are secret (CPL 190.25 [4]), and defendant’s vague references to fairness and due process are not adequate predicates for the disclosure he seeks (see, Matter of Kinsella v Andreoli, 95 Misc 2d 915 [Sup Ct, Onondaga County 1978]; see also, Matter of Grand Jury, 125 Misc 2d 918 [Sup Ct, NY County 1984]).
Finally, a review of the minutes reveals that neither records nor any other evidence obtained from defendant’s psychologist were presented for the Grand Jury’s consideration. Assuming, as defendant argues, that the District Attorney misused the subpoena process in obtaining the records, such would not be fatal to the indictment in any event as the records were not presented (see, People v Currier, 221 AD2d 805 [3d Dept 1995]; see also, People v Natal, 75 NY2d 379 [1990]). The foregoing is nevertheless without prejudice to a future application by defendant for sanctions in the event it is later determined that the subpoena process was in fact misused to obtain privileged materials (cf., People v Currier, supra, at 807).
B. Ex Post Facto Issue
Defendant next seeks dismissal of count one of the indictment which charges him with the crime of murder in the first degree in violation of Penal Law § 125.27 (1) (a) (xi). That section provides in pertinent part that a person is guilty of murder in the first degree when, with intent to cause the death of another person, he causes such death, and: "(xi) the defendant intentionally caused the death of two or more additional persons within the state in separate criminal transactions within a period of twenty-four months when committed in a similar fashion or pursuant to a common scheme or plan” (Penal Law § 125.27 [1] [a] [xi]). Pursuant to this subdivision, the first count of the indictment alleges that defendant caused the death of two additional persons within 24 months prior to the murder of Kelly Sue Bunting, the first of an unidentified female occurring on or shortly before December 7, 1994, the second of another unidentified female occurring on or shortly *538 before April 6, 1995. Kelly Sue Bunting, the indictment alleges, was murdered on or shortly before December 11, 1995. Section 125.27 of the Penal Law became effective on September 1,1995, postdating the murders of the two unidentified females.
Defendant’s ground for dismissal of count one is article I, § 10 of the United States Constitution which prohibits the enactment of ex post facto laws. Defendant argues that Penal Law § 125.27, as applied to him, alters to his detriment the legal consequences of acts occurring before that section’s enactment, thereby violating the constitutional prohibition against retrospective laws.
The People oppose the motion, arguing that the additional killings’ alleged function to "enhance” the sentence defendant may receive for the murder of Kelly Sue Bunting. Hence, the People argue that section 125.27, as applied to defendant, does not retrospectively increase the possible punishment for the December 7, 1994 and April 6, 1995 killings, but only for that of Bunting which occurred after enactment of the section.
The Supreme Court of the United States has stated that the Ex Post Facto Clause prohibits any penal statute which (1) punishes as a crime an act previously committed which was innocent when done, (2) makes more burdensome the punishment for a crime after its commission, or (3) deprives one charged with a crime a defense which was available by law at the time the act was committed (see, Collins v Youngblood, 497 US 37 [1990]). Excluded by definition, therefore, are those statutes which permit the enhancement of punishment for a present crime based upon a prior crime, even where the prior crime occurred before enactment of the penalty-enhancing statute (see, Gryger v Burke, 334 US 728 [1948]; McDonald v Massachusetts, 180 US 311 [1901]).
Sister States have applied this reasoning in their resolution of ex post facto challenges to capital crime statutes. For example, New Jersey’s capital murder statute permits a jury to consider a defendant’s prior murder conviction as an aggravating factor. In State v Erazo (126 NJ 112, 594 A2d 232 [1991]), defendant challenged this provision on ex post facto grounds, as his prior murder conviction predated the statute’s enactment. In rejecting defendant’s argument, the court pointed out that "[e]vidence of a prior murder is admissible under [the statute] not for the purpose of punishing defendant for that murder, but to enable the jury to determine the appropriate sentence for the present murder” (State v Erazo, supra, 126 NJ, at 134, 594 A2d, at 243). Similar statutes have *539 been upheld on like reasoning (see, e.g., People v Sims, 167 Ill 2d 483, 658 NE2d 413 [1995], cert denied — US —, 116 S Ct 1577 [1996]; Stano v State, 473 So 2d 1282 [Fla Sup Ct 1985], cert denied 474 US 1093 [1986]; State v McDowell, 310 NC 61, 310 SE2d 301 [1984]; Solomon v State, 247 Ga 27, 277 SE2d 1 [1981], cert denied 451 US 1011 [1981]). The court is cognizant that in each case cited, the challenged provision involved an aggravating factor applicable during the penalty phase of the trial. The court is also cognizant that the instant subdivision of the New York statute requires proof of prior killings as elements of the crime of murder in the first degree. A different outcome is nevertheless unwarranted by this circumstance. Under clause (xi) of Penal Law § 125.27 (1) (a), a defendant cannot be deemed to have committed murder in the first degree until after he or she commits the third killing.Y' 'A statute is not retroactive * * * when made to apply to future transactions, merely because such transactions relate to and are founded upon antecedent events’ ” (People v Weinberg, 83 NY2d 262, 265 [1994]; People v Cintron, 163 Misc 2d 881 [Sup Ct, Kings County 1995]).
Accordingly, that portion of defendant’s motion seeking dismissal of count one on ex post facto grounds is denied.
C. Oral Statements
Defendant’s motion to suppress his oral statements on the basis that the People’s notice of intent to offer the statements at trial is defective is denied. Defendant argues that the People’s failure to serve him with the questions propounded by homicide detectives in addition to copies of his statements in response thereto deprives him of a full and fair opportunity to challenge the statements’ admissibility and renders the People’s notice defective. However, the People are required pursuant to CPL 710.30 (1) to inform defendant of the time and place the statements were made and the sum and substance of those statements (see, People v Lopez, 84 NY2d 425 [1994]), which it appears defendant has received. There being no authority for defendant’s request, the motion is denied.
There shall be a hearing immediately preceding the trial to determine the admissibility of defendant’s statements in accordance with People v Huntley (15 NY2d 72 [1965]).
D. Discovery
Defendant prefaces his discovery requests with the proposition that as his is potentially a capital case, he is entitled to "heightened due process”, and thereby is entitled to expanded *540 discovery. As this court and others have concluded, however, capital cases do not require an "enhanced” level of due process (People v Rodriguez, 168 Misc 2d 219 [Sup Ct, NY County 1996]). Moreover, the right to discovery is statutory rather than constitutional (see, Matter of Miller v Schwartz, 72 NY2d 869 [1988]). As the Legislature did not expand the prosecution’s discovery obligations when it enacted New York’s capital murder statutory scheme, the court lacks authority to grant discovery requests beyond those for which the Criminal Procedure Law currently provides (see, Matter of Pirro v LaCava, 230 AD2d 909 [2d Dept 1996]). Accordingly, defendant’s requests are determined as follows:
(1) Defendant’s request for discovery of any statements made to "a public servant engaged in law enforcement activity” or other person working in cooperation therewith which the People do not intend to offer on their direct case, etc., is granted to the extent already provided by the People.
(2) Defendant’s requests for reports of any physical or mental examination, or scientific tests, etc., is granted to the extent provided by the People, who shall furnish such further reports as they come into their possession (CPL 240.20 [1] [c]). Any material which is required to be supplied pursuant to CPL 240.45 shall be supplied at the time provided in subdivision (1) of that section.
(3) Defendant’s request for photographs and drawings is granted to the extent provided by the People.
(4) (a-b) Defendant’s request for all physical evidence seized from defendant is granted to the extent provided by the People.
(c) Defendant’s request for discovery of papers, documents, etc., of defendant "no matter what the source” is granted to the extent that the People shall make available all such material which was "obtained from the defendant” (CPL 240.20 [f]; see, People v DeMay, 213 AD2d 1022 [4th Dept 1995]).
(d-f) Defendant’s requests for electronic and computer devices or other such device "for recording or storing information”, the identity of those in custody of such evidence, and "any and all” evidence seized by officials that supports "in any manner whatsoever” the charges against defendant are denied. In their present form, these requests are indefinite and beyond the scope of CPL 240.20.
(5) Defendant’s request for tapes or other electronic recordings is granted to the extent provided by the People, and as further such material comes into the People’s possession.
(6) As to defendant’s requests for evidence discoverable pursuant to Brady v Maryland (373 US 83 [1963]):
*541 (a-h) Defendant’s requests for witness information are granted to the extent provided by the People.
(i) As to defendant’s request for the names of other individuals considered by authorities to be suspects in the subject murders, the parties are referred to People v Robinson (133 AD2d 859 [2d Dept 1987]), wherein the Court held that the prosecutor’s failure to disclose a statement from an individual implicating three other men as the perpetrators of the crime constituted a Brady violation (133 AD2d, supra, at 860; see also, People v Lumpkins, 141 Misc 2d 581 [Sup Ct, Kings County 1988]). The People are to be guided accordingly should like information come into their possession.
(j-k) Defendant’s requests for facts indicating that evidence was "illegally” obtained and for all exculpatory reports, etc., are denied upon the People’s representation that they have no knowledge that such exist.
(7) As to defendant’s requests for evidence discoverable pursuant to Giglio v United States (405 US 150 [1972]):
(a, e, f, h) Defendant requests a wide range of impeachment materials, including prior convictions and "bad acts” of witnesses the People intend to call at trial; records of authorities containing information as to convictions and bad acts of witnesses; and records of law enforcement officers involved in investigating the instant case pertaining to misconduct, civilian complaints and "all allegations” of misconduct, no matter what the source. The People agree to provide information concerning prior convictions and pending criminal actions against prosecution witnesses. They object, however, to providing information concerning bad acts and "unfounded” allegations against law enforcement officers.
However, defendant may be entitled to disclosure of "bad acts” of "critical” prosecution witnesses, including law enforcement officers, which are known to the prosecution and which are "directly probative of [such] witness’s veracity about matters on which he testified] at the trial” (People v Shakur, 169 Misc 2d 961, 973 [Sup Ct, NY County 1996]; see, People v Vasquez, 214 AD2d 93 [1st Dept 1995]). This shall not, however, require the People to comb through the personnel files of law enforcement officers connected with the case in search of such material (see, People v Shakur, supra, at 966-967; see, People v Gissendanner, 48 NY2d 543 [1979]; Civil Rights Law § 50-a). The People are to be guided accordingly.
(b) Defendant’s request for detention, jail, parole, probation and presentence investigation records of prosecution witnesses is granted to the extent provided by the People.
*542 (c, i, q) Defendant seeks information concerning treatment or institutionalization for psychiatric disorders of any witness the People intend to call at trial or who testified before the Grand Jury, and reports recommending mental examinations of same. Defendant also seeks the psychiatric records of all peace officers and prosecutors involved in the case. The People state that while they are unaware of like information pertaining to witnesses, such information, as well as the records of public servants, are beyond the scope of Brady (supra). The parties are referred to People v Cesar G. (154 Misc 2d 17 [Crim Ct, NY County 1991]). Therein, the court, after an in camera inspection of the victim’s psychiatric records, found they were not suggestive of any impairment of memory, perception, ability to communicate or motive to lie, and therefore, were not discoverable pursuant to Brady. The People are to be guided accordingly. That portion of defendant’s requests addressed to recommendations for mental exams and records of public servants involved in the case is denied.
(d, n) Defendant requests information concerning treatment for alcohol or drug abuse of "any” prosecution witness, to which the People object. The parties are referred to People v Fappiano (134 Misc 2d 693 [Sup Ct, Kings County 1987], affd 139 AD2d 524 [2d Dept 1988], lv denied 72 NY2d 918 [1988]). Therein, the court held that evidence of chronic alcoholism, by itself, was outside the scope of Brady (supra). Nevertheless, the court held that "evidence demonstrat[ing] that the condition * * * causes the witness some degree of mental impairment, such as hallucinating or 'blacking out’, and * * * evidence showing] he was drinking near the time of the event” would be both favorable and material within the context of Brady (People v Fappiano, 134 Misc 2d, supra, at 697). The People are to be guided accordingly.
(g) Defendant’s request for information indicating bias and inaccuracies in the police investigation is granted to the extent provided by the People.
(j-k) Defendant’s requests for information concerning consideration received by prosecution witnesses or persons with a pecuniary interest in the case are denied upon the People’s representation that they are not in possession of such information. The remainder of defendant’s requests are beyond the scope of Brady (supra).
*543 (1, m, o, p, r, s) These requests are granted solely to the extent provided by the People.
Defendant’s remaining disclosure requests are granted solely to the extent provided by the People.