OPINION OF THE COURT
Anne G. Feldman, J.
*161 Defendant moves this court to find CPL 400.27 (10) unconstitutional pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and article I, §§ 1 through 6, 11, 12 and 14 of the New York State Constitution. Defendant argues that the deadlock instruction mandated by CPL 400.27 (10) will coerce the sentencing jury into rendering a death verdict; that the statute is designed to compel a unanimous verdict at “almost any cost”; and that as a coercive pressure on jury deliberations it will lead to an arbitrary and unreliable verdict.
The People assert that defendant’s claims are premature and that any judicial intervention should await the eventuality of a penalty phase in this trial. On the merits, the People argue that the instruction serves the necessary function of informing the jury of the statutory procedure in the event that it cannot reach a unanimous verdict; that the instruction is intended not to coerce a verdict of death but rather to relieve the jury from feeling pressured into reaching a unanimous verdict; and that the sentencing scheme in a capital case is a State prerogative.
Thus the issue before the court is whether the required deadlock instruction fulfills the legitimate goal of alleviating the pressure on a sentencing jury to reach a unanimous verdict or increases the pressure to the point of creating the danger of a coerced death penalty verdict. In this court’s view a grave and substantial risk exists that the statutory instruction could coerce a verdict of death, an unconstitutional result.
CPL 400.27 (10) provides in pertinent part that: “In its charge, the court must instruct the jury that with respect to each count of murder in the first degree the jury should consider whether or not a sentence of death should be imposed and whether or not a sentence of life imprisonment without parole should be imposed, and that the jury must be unanimous with respect to either sentence. The court must also instruct the jury that in the event the jury fails to reach [a] unanimous agreement with respect to the sentence, the court will sentence the defendant to a term of imprisonment with a minimum term of between twenty and twenty-five years and a maximum term of life.” (Emphasis added.)
At the outset this court finds that the question of the constitutionality of CPL 400.27 (10) is ripe for resolution. At defendant’s request this decision to hold the deadlock instruction unconstitutional was initially placed orally on the record prior to the start of jury selection enabling the parties to effectively frame the parameters of the issues they wished to *162 explore on the voir dire.[1] Thus, contrary to the People’s position, the rendering of this decision was necessary to resolve a disputed legal question having “an immediate practical effect on the conduct of the parties.” (New York Pub. Interest Research Group v Carey, 42 NY2d 527, 530.)
The qualitative difference between death and all other punishments calls for a greater degree of reliability when a death sentence is imposed (Lockett v Ohio, 438 US 586, 602). This heightened reliability which concomitantly requires increased judicial scrutiny is essential to assure that the determination of death is the appropriate punishment in a specific case (Woodson v North Carolina, 428 US 280, 305). Moreover, “[a] capital sentencing scheme must * * * provide a ‘ “ ‘meaningful basis for distinguishing the few cases in which [the (death) penalty] is imposed from the many cases in which it is not.’ ” ’ ” (Godfrey v Georgia, 446 US 420, 427.)
While the Supreme Court has generally left undisturbed the substantive factors and mechanisms employed by individual States in determining the proper penalty (California v Ramos, 463 US 992, 1001) such deference is not unbounded. The discretion of the sentencing jury must be suitably limited “so as to minimize the risk of wholly arbitrary and capricious action.” (Gregg v Georgia, 428 US 153, 189.) “The imposition of death sentences on the basis of sheer speculation about unknowables can only be arbitrary and capricious.” (California v Ramos, supra, at 1021 [Marshall, J., dissenting].) An instruction that injects a level of uncertainty or unreliability “cannot be tolerated in a capital case.” (Beck v Alabama, 447 US 625, 643.)
In most capital jurisdictions the jury acts as the final sentencing authority. Anticipating the possibility that the sentencing jury may be unable to arrive at a unanimous verdict the sentencing schemes in the large majority of these States transfer to the trial court the responsibility of imposing sentence when a jury deadlocks. However, in all such jurisdictions the trial court is only empowered to impose as a sentence one of the nondeath sentences the jury had been instructed to consider. In only three jurisdictions other than New York does the statutory scheme require that the jury be told what will happen in the event of a deadlock, and there too the jury is *163 informed that one of the lesser penalties it has considered will be imposed by the court.[2]
Only in the State of New York has the Legislature concluded that the sentencing jury must be informed that a lesser penalty, not within the jury’s power to consider, will be imposed by the trial court if the jury reaches an impasse. Members of the State Legislature were not unaware of the potential coercive effect the deadlock instruction might have on a jury. On the eve of the vote wherein the death penalty was reinstated the question of whether this default instruction was inherently coercive was raised (Senate Debate on Senate Bill S 2850, Mar. 6, 1995, at 1916). The provision’s proponents, while recognizing the constitutional dimension of a potential coercive instruction, responded that “a much more serious constitutional problem” would arise with a failure to fully inform the jury. (Senate Debate on Senate Bill S 2850, Mar. 6, 1995, at 1916.)[3]
While the legislative history of the Capital Offenders Law does not reflect the venomous intent defendant attributes to proponents of CPL 400.27 (10), the instruction nevertheless has the unforseen but likely practical effect of deliberately injecting uncertainty into the sentencing proceedings. The deadlock instruction alerts the jurors to the possibility that if they do not reach a unanimous verdict defendant may within 20 or 25 years be released from custody. “A capital sentencing jury is made up of individuals placed in a very unfamiliar situation and called on to make a very difficult and uncomfortable choice * * * [T]hey are given only partial guidance as to how their judgment should be exercised, leaving them with substantial discretion.” (Caldwell v Mississippi, 472 US 320, 333.) In choosing between death and a term of imprisonment “a defendant’s future dangerousness bears on all sentencing determinations made in our criminal justice system.” (Simmons v South Carolina, 512 US 154, 162.) “[A]ny sentencing authority must predict a convicted person’s probable future conduct when it engages in the process of determining what punishment to impose.” (Jurek v Texas, 428 US 262, 275.) Thus, in exercising their discretion, the jurors, having been made aware of the sentence the Judge will impose in the event of deadlock, may conclude that the imposition by the Judge of *164 a sentence of 20 to 25 years to life could lead to parole for the defendant.[4]
“In assessing future dangerousness, the actual duration of the defendant’s prison sentence is indisputably relevant. Holding all other factors constant, it is entirely reasonable for a sentencing jury to view a defendant who is eligible for parole as a greater threat to society than a defendant who is not.” (Simmons v South Carolina, supra, at 163.) Here, the court, in delivering the required instruction under CPL 400.27 (10), would be implicitly placing the possibility of defendant’s future liberty in the jury’s mind. Jurors favoring life without parole may relinquish their conscientiously held views and join the majority in voting to impose the death penalty to avoid the possibility of a potentially lighter sentence if they see as a real prospect defendant’s eventual return to society. While the People argue correctly that such pressure could also lead to a verdict of life without parole there is simply no way of predicting in what configuration the jury would be deadlocked and it is thus impossible to anticipate which way the added weight of the deadlock instruction would fall. Under such circumstances the mandated instruction has the strong potential of acting as a “thumb * * * [on] death’s side of the scale” (see, Stringer v Black, 503 US 222, 232).
“Any criminal defendant, and especially any capital defendant, being tried by a jury is entitled to the uncoerced verdict of that body.” (Lowenfield v Phelps, 484 US 231, 241.) This principle that a juror may not be coerced by a trial court’s instruction to surrender a conscientiously held view is “ ‘so clear as to require no elaboration.’ ” (Jenkins v United States, 380 US 445, 446.) Accordingly, a statutory provision which has the potential of coercing a unanimous death sentence determination undermines the reliability of that verdict and must be held unconstitutional.
Accordingly, the deadlock instruction in CPL 400.27 (10) is held to be unconstitutional.

. This formal opinion explains the oral decision.

. Mo Stat Annot § 565.030 (4); NJ Stat Annot § 2C:11-3 (f); Ore Rev Stat § 163.150 (2) (a).

. The source of that “constitutional problem” was not articulated.

. While under the statute the court must instruct the jury that it is to decide with respect to each count of murder in the first degree whether defendant should be sentenced to life without parole or to death, the default instruction requires the court to tell the jury that upon deadlock it will impose a sentence of between 20 and 25 years to life without reference to whether the sentence will be concurrent or consecutive as to each count. And, of course, it would be improper for the court to inform the jury what its final sentence would be.