OPINION OF THE COURT
Richard C. Giardino, J.
*622 The defendant has moved this court for an order directing the Fulton County Sheriffs Department and other relevant law enforcement agencies as follows:
“A. To permit Mr. Morgan to appear at all pretrial and trial proceedings in this case without handcuffs, leg irons, shackles, or other visible restraints, and to appear in civilian clothing; and
“B. Not to employ visibly excessive security at such proceedings or in bringing Mr. Morgan to and from these court proceedings.”
In support of his motion, defendant has submitted copies of newspaper articles that include photographs of defendant wearing prison garb and handcuffs. Defense counsel argues that such a portrayal in local media violates defendant’s “inviolate right to the presumption of innocence” (and thus his concomitant right to due process) by sending a message to potential jurors among the general public that defendant is “a dangerous animal, that he is guilty, and that he is a serious risk of escape.”
The People term defendant’s request “premature, unreasonable and unsupported by the laws of New York.” The People acknowledge that defendant generally cannot be manacled or dressed in prison garb when the jury is present. They have submitted copies of relevant portions of the Fulton County Sheriff’s Department Policy and Procedure Manual which include provisions directing that an inmate be dressed in civilian clothes when in the presence of a jury. However, the People assert that considerations of safety and security warrant the use of restraints and prison clothing during pretrial proceedings when the jury is not present, citing the nature of the current charges against defendant and his past criminal record (which includes five previous arrests, one for assault with a weapon).
After consideration of the papers, exhibits, legal authority and arguments submitted on this motion, and after granting the defense request for one week to reply to the papers submitted by the People, and no such reply having been received by the court, for the reasons set forth below, defendant’s motion is denied.
THE BASIC RULE
A defendant in a criminal proceeding cannot be physically restrained in the presence of the jury, unless there is a reasonable basis for doing so stated in the record (People v Rouse, 79 *623 NY2d 934). A defendant must also be allowed to wear his own clothing when the jury is present (People v Roman, 35 NY2d 978). The Rouse opinion relied on the previous Court of Appeals decision in People v Mendola (2 NY2d 270, 275), which in turn quoted from Code of Criminal Procedure § 10 as being declaratory of the common law: “a person charged with a crime cannot ‘be subjected, before conviction, to any more restraint than is necessary for his detention to answer the charge.’ ”
At the same time, it has recently been restated in the context of another capital case that a county, through the office of the Sheriff, is charged by statute (County Law § 650; Judiciary Law § 403; Correction Law § 500-c) with the responsibility for maintaining security in the courtroom (People v Whitehurst, Ulster County Ct, Feb. 12, 1996, indictment No. 172-95, citing People v McCloud, 69 AD2d 957). Whether the degree of restraint employed by the Sheriff in carrying out his duty goes beyond that which is necessary for the defendant’s detention to answer the charge is ultimately a decision for the Trial Judge to make (People v Mendola, supra).
“heightened due process”
Defendant cloaks this motion in terms of his claimed entitlement, as a potential capital defendant, to “heightened due process”. Defendant derives this argument from a line of cases from the United States Supreme Court, including Woodson v North Carolina (428 US 280), which was cited by the New York Court of Appeals in People v Smith (63 NY2d 41), where it struck down New York’s former mandatory death penalty statute. Defendant focuses on the analysis under the Eighth and Fourteenth Amendments to the United States Constitution, found in Woodson and its progeny, which acknowledges a “qualitative [] difference” between the death penalty and other criminal punishments, and a “corresponding difference in the need for reliability in the determination that death is the appropriate punishment” (Woodson v North Carolina, supra, 428 US, at 305).
While the Supreme Court has clearly stated that capital cases require greater scrutiny on review, the term “heightened due process” is not actually used in the opinions cited by defendant as its source. The Woodson decision, and Beck v Alabama (447 US 625), speak of guarding “the reliability of the sentencing determination” (Beck v Alabama, supra, 447 US, at 638; Woodson v North Carolina, supra, 428 US, at 305). The opinion in Eddings v Oklahoma (455 US 104, 111) states, “the Court *624 has attempted to provide standards for a constitutional death penalty that would serve both goals of measured, consistent application and fairness to the accused”. The more recent opinion in Kyles v Whitley (514 US 419, 422) states, “ ‘[o]ur duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case.’ [Citation omitted]”.
Defendant cites several decisions of New York courts in an effort to show that the Woodson line of cases superimposes a requirement of heightened due process upon New York criminal procedure in capital cases. Because the cases cited by defendant (including the People v Smith decision, supra) predate New York’s current death penalty statute, enacted in 1995, their reasoning is necessarily focused on New York’s former laws, and address issues that are not relevant under the current statute. Some of those cases also predate the Woodson decision (supra) on which defendant relies.
The New York Legislature undertook extensive amendment of New York statutes when it enacted our current death penalty through the Capital Offenders Law in 1995 (e.g., CPL 270.16 [expanded juror voir dire in capital cases], 400.27 [separate “penalty phase” of trial in capital cases]; Judiciary Law § 35-b [expansion of assigned counsel in criminal cases through creation of Capital Defender office]). The scope of these amendments was in part a response to United States Supreme Court decisions in capital cases such as those discussed above (see, Mem of St Exec Dept, 1995 McKinney’s Session Laws of NY, at 1781 et seq., citing Woodson v North Carolina, supra, and Beck v Alabama, supra, among others). The New York Legislature has thus sought to avoid the pitfalls pointed out by the Supreme Court, and to enact a death penalty that was, in one commentator’s words, “constitutionally acceptable” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 270.16, 1998 Pocket Part, at 164; see also, CPL 400.27).
The Legislature having spoken, one could argue that a sufficient guide for trial courts is in place. Yet cases decided after the enactment of the 1995 Capital Offenders Law show the courts continuing to struggle with this concept. Indeed, one trial court has recently been called upon to adjudicate the constitutionality of portions of the Capital Offenders Law itself, the challenge having been mounted on the basis of this same line of Supreme Court decisions (see, People v Harris, 177 Misc 2d 160).
*625 A distinct lack of agreement as to what the Supreme Court decisions require in capital cases is reflected in the inability of New York courts even to label the concept consistently (see, e.g., People v Hale, 173 Misc 2d 140 [“heightened due process”]; People v Arthur, 175 Misc 2d 742 [“heightened scrutiny”]; People v Whitehurst, supra [“super due process”]). Some courts have held that the Supreme Court decisions at issue do not require any enhancement of due process (People v Shulman, 172 Misc 2d 535, 540, citing People v Rodriguez, 168 Misc 2d 219). However, the cases reviewed by this court show this to be a minority view.
While New York court decisions thus appear to concede that there may be some extra element of care required in capital cases, the focus has been on which point in the proceeding such an element applies. The decisions have been nearly unanimous in stating that heightened due process does not have “blanket” application to each and every stage of a capital case (see, e.g., People v Gordon, 175 Misc 2d 67; People v Arthur, supra; People v Hale, supra; People v Chinn, NYLJ, Nov. 19, 1996, at 31, col 3 [Onondaga County Ct 1996]; People v Szlekovics, Monroe County Ct, 1996, indictment No. 96-915).
However, there has been no such unanimity as to just when it might apply. While many decisions state that heightened due process does not apply to a particular proceeding (e.g., People v McIntosh, Dutchess County Ct, Dec. 13, 1996, indictment No. 146/96 [Grand Jury proceeding]; People v Shulman, supra [discovery]), another line of cases take the position that heightened due process applies only to the penalty phase of a capital case, and thus has no application in any proceeding prior to conviction (e.g., People v Bastien, 170 Misc 2d 103; People v Rodriguez, supra).
Reference to the United States Supreme Court cases relied upon in these various decisions does little to clarify the picture. For example, those courts holding that heightened due process applies only at the penalty phase rely on the United States Supreme Court decision in California v Ramos (463 US 992). While the Ramos decision dealt with the Supreme Court’s review of a jury instruction used in the penalty phase of capital cases in California, the opinion does not draw quite so sharp a distinction. Indeed, one of the cases discussed in Ramos is the Supreme Court’s earlier decision in Beck v Alabama (supra), which is advanced by the defense in the case at bar for the proposition that heightened due process applies at the guilt phase as well as the penalty phase. In Beck, the Supreme Court *626 struck down an Alabama statute which prevented the jury in a capital case from considering lesser-included offenses at the guilt phase of trial. While the opinion in Ramos discusses the differing considerations undertaken by a jury at the guilt and penalty phases (California v Ramos, supra, 463 US, at 1007-1008), the Beck case is neither overruled nor criticized.
The most helpful guide encountered by this court comes from People v Arthur (supra), a decision by Justice Marcy L. Kahn, Supreme Court, New York County, who cochairs the Capital Cases Judicial Resource Committee of the New York Unified Court System. In Arthur, Justice Kahn conducts an extensive review and analysis of both Federal and New York cases. She finds a “connecting thread” running through the various Supreme Court decisions in that the Court applies a higher level of scrutiny at any stage of a capital case that directly affects the sentencing determination. Justice Kahn points out that New York’s capital punishment scheme interweaves the guilt and punishment phases in that most of the “aggravating factors” to be weighed against mitigating factors in the penalty phase are actually established during the guilt phase, and may not be relitigated later (supra, at 754, citing CPL 400.27 [3]). She concludes that “a heightened standard of reliability is required in determining that death is the appropriate punishment, whenever that determination is * * * made” (supra, at 754).
After reading the cases cited above, and many others, this court still has found no clear authority for the application of a “heightened due process” in capital cases. The United States Supreme Court limits its discussion to increased scrutiny employed on review. The courts of New York, while appearing to acknowledge some need for additional care, are fractured in their views, leaving a body of cases that defies definition rather than supplying it. Certainly this court must be scrupulous at all phases of this case in its observance of existing substantive and procedural safeguards designed to protect defendant’s rights, including those contained in New York’s 1995 death penalty legislation. However, any ádditional overlay of care or scrutiny that may be required by the United States Supreme Court, if indeed there is such a requirement, appears to be reserved to those portions of this proceeding that directly affect the sentencing determination.
defendant’s application
Defendant has cited no authority, and this court has found none, holding that the existing prohibitions against the use of *627 unnecessary restraints or jail clothing enunciated by the Court of Appeals in the Rouse (79 NY2d 934, supra) and Roman (35 NY2d 978, supra) cases have been extended to pretrial proceedings, where no jury is present. The court’s review of those portions of the Fulton County Sheriff’s Department Policy and Procedure Manual submitted by the People shows the procedures set forth to be reasonable, and directly related to the safety of both the public and the defendants affected.
Defendant’s current motion is directed at his portrayal in the media, and its effect on potential jurors in the general public. This court certainly is sensitive to the possibility of tainting the pool of potential jurors with excessive or sensational pretrial publicity, as is shown by the fact that the preliminary hearing in this matter was closed to the press and public, and all papers filed in this matter containing potentially sensational material have been sealed pending further order of the court. Given these precautions, the portrayal of defendant in the media thus far, of which this court takes judicial notice, has not even approached the sensational. Any “taint” which may still affect the minds of potential jurors can be addressed by defendant on voir dire.
Moreover, applying the analysis from the Arthur decision (supra) shows that “heightened due process” — whatever that may be — does not affect this application, as it involves an aspect of this proceeding for which the effect on the sentencing determination will be indirect, at best. This proceeding is still in its early stages, with discovery still ongoing. All normal pretrial motions will be filed by July, and all hearings called for by those motions will be held in August. Barring unusual circumstances, there should be no proceedings at which defendant will appear after that time. Jury selection will not begin until October. All of these pretrial proceedings are thus too far removed from the sentencing decision, both in procedure and in time, for any notion of heightened due process to apply.
Defendant’s motion is denied.