OPINION OF THE COURT
Anne G. Feldman, J.
This written opinion amplifies an oral decision rendered on June 11, 1996. Defendant is accused of having intentionally killed two elderly women. The District Attorney having advised that this was a potential capital offense case, the Capital Defender Office is representing defendant (Judiciary Law § 35-b). At Criminal Court arraignment on May 25, 1996, counsel served notice pursuant to CPL 190.50 of the defendant’s intention to testify before the Grand Jury and waived her rights to release under CPL 180.80.
On May 30, 1996, after the District Attorney’s office had started its presentation to a Grand Jury whose term expired on June 4, 1996, defense counsel asked the District Attorney to furnish extensive discovery material which they characterized as possibly exculpatory, and to voir dire and charge the grand jurors on issues pertaining to racial attitudes and the death penalty. Counsel contended that until a response was received, *329 defendant could not intelligently and knowingly exercise her CPL 190.50 rights and they would be unable to provide effective assistance to her. When the prosecution refused to comply with their demands defense counsel asked the court to direct that it do so prior to June 12, the deadline for defendant’s decision on whether she would testify before the Grand Jury. Oral argument on the issues raised by counsels’ letter was held on June 3 and June 4 and both parties submitted additional written arguments thereafter.
It is defense counsels’ contention that because this is a potential death penalty case the defendant is entitled to heightened due process rights at every stage of the proceedings, including the Grand Jury presentation. They argue therefore that defendant should receive the requested discovery material and be assured that the Grand Jury will be voir dired and instructed as demanded. The prosecution opposes defendant’s application in its entirety and contends that none of the requests are constitutionally, statutorily or judicially required.
In large part, this court agrees with the prosecution. Counsels’ argument ignores the statutory scheme of the newly enacted Capital Offender’s Law, overreads the holdings in several Federal court decisions, and seeks to apply the procedural safeguards required in death penalty cases to a stage of the proceeding where they have never been required. The type of information defendant demands is by statute furnished only after indictment pursuant to motion practice conducted in accordance with CPL article 240. The new law does not alter the schedule under which the prosecution must furnish discovery material and no authority has been cited or rational argument advanced to justify requiring the prosecution to furnish it preindictment. While, as defendant argues, a death penalty case is qualitatively different from all other crimes it does not require a judicial rewriting or reinterpretation of the rules governing Grand Jury presentations.
It is well settled that a defendant’s right to testify before the Grand Jury is purely statutory (see, People v Smith, 87 NY2d 715, 719; CPL 190.50 [5]). Thus, there are no constitutional implications to defendant’s decision on whether to testify. The prosecution is not required to furnish any defendant contemplating an appearance before the Grand Jury with information concerning testimony or statements made by others (see, Matter of Hynes v Cirigliano, 180 AD2d 659; CPL 240.20 [1]). No support has been offered for counsels’ demand that because this defendant faces the potential of a death *330 penalty she is entitled to material to help her decide whether to testify or to help her prepare her testimony. In considering whether to go before the Grand Jury the defendant must anticipate the possibility that cross-examination or testimony by others might affect the jurors’ assessment of her credibility. No defendant is entitled to be forewarned about such potential dangers.
In addition to seeking discovery, defense counsel asked the court to require the prosecution to voir dire grand jurors about their attitude toward the death penalty, and for possible racial bias and prejudice. Again, no authority has been offered to support a demand of this nature.[1]
Finally, counsels’ request that the Grand Jury be advised that this is a potential death penalty case and be given detailed information about the possible sentence seeks to place before the Grand Jury matters not properly within its purview. Counsel appears to concede that such instructions would play upon the sympathy of the jurors but argues this would be appropriate because with this information the Grand Jury would be able to exercise its "mercy function”, as sanctioned by the Court of Appeals in People v Sullivan (68 NY2d 495). However, Sullivan is not relevant here. There the grand jurors were not told the range of authorized punishments for the crimes they were considering. Instead, having been given evidence about the killing of a deranged woman by a police officer and instructed on the elements of both intentional murder and manslaughter, the Court held they could exercise their " 'mercy-dispensing power’ ” by indicting the officer for manslaughter in the second degree rather than for intentional murder (supra, at 501).
Under established law the prosecution here, as in any case, is obligated to provide the jurors with a balanced presentation of the evidence and to give legal instructions which recite the elements of crimes relevant to that evidence (see, People v Lancaster, 69 NY2d 20). As is clear from Sullivan (supra), after such a presentation the decision on the charges to return lies within the discretion of the grand jurors.
*331 The cases cited by the defendant as authority for compelling the District Attorney to restructure its presentation to the Grand Jury are not germane. By a selective reading of isolated phrases, taken out of context, defense counsel have transported judicial pronouncements well beyond the areas in which they have previously been applied or for which they are appropriate.
For example, during oral argument counsel quoted extensively from Vasquez v Hillery (474 US 254) as authority for the proposition that because the Grand Jury has wide discretion in determining what charges it will issue it should be provided with details concerning the possibility of a death penalty. Reliance on Vasquez is misplaced. There the Court held that the intentional exclusion from the Grand Jury of persons of the same race as the defendant was a constitutional error of such dimension that it could not be cured even by a fair trial. While as defense counsel noted, the Vasquez Court emphasized the importance of the Grand Jury and referred to its significant powers, this discussion was not focused upon the presentation to the Grand Jury but rather on the indelible taint race discrimination in the Grand Jury composition cast upon the entire case.
Similarly, the language relied upon for concluding that heightened due process requires the discovery and jury charges sought here was used by the Supreme Court only with reference to the verdict or sentencing aspects of a capital case (e.g., Woodson v North Carolina, 428 US 280; Lockett v Ohio, 438 US 586; Beck v Alabama, 447 US 625).
The court does however believe that in one respect the District Attorney’s discretion in presenting a potential death penalty case to the Grand Jury should be circumscribed. The Capital Offender’s Law is unique not only because it carries with it the potential of death but also because of the unprecedented power it places in the District Attorney’s office. The statute provides that once the Grand Jury returns an indictment of murder in the first degree the only permissible sentences are death, life without parole, or incarceration for a minimum period of 20 to 25 years and a maximum of life. Should a defendant wish to plead guilty in a case where the prosecution is seeking the death penalty the court may accept the plea and impose a lesser sentence only with the consent of the District Attorney who also would appear to have ultimate control over the sentence even if the death penalty is not being sought.
*332 By comparison, where the highest charge in an indictment is murder in the second degree, not only is the range of authorized sentences far greater (Penal Law § 70.00 [2] [a]; [3] [a] [i]) but the Trial Judge may accept a guilty plea and impose sentence over the prosecution’s objection.
In view of these stringent statutorily imposed plea bargaining limitations and in the interest of avoiding an unnecessary prosecution for murder in the first degree, a departure from existing law governing a Grand Jury presentation is warranted in one respect. Where a defendant offers evidence of "[an] extreme emotional disturbance for which there [is] a reasonable explanation or [cause]” the Grand Jury should be instructed as to the impact of such evidence (Penal Law § 125.27 [2] [a]). Thus the Grand Jury should be made aware that extreme emotional disturbance constitutes an affirmative defense which precludes a charge of murder in the first degree (Penal Law § 125.27 [2] [a]).
Notwithstanding the decisions in People v Lancaster (supra) and People v Valles (62 NY2d 36), where the Court of Appeals held that the prosecution was not required to instruct a Grand Jury concerning affirmative defenses which would not completely preclude prosecution, this court believes such an instruction should be given here.
Both decisions antedate the death penalty statute. In People v Valles (supra, at 38), the Court held that a particular defense need only be presented to the Grand Jury when it has the "potential for eliminating a needless or unfounded prosecution”. When warranted by the evidence in a prospective capital case, an instruction to the Grand Jury on extreme emotional disturbance would extend Valles and could allow the Grand Jury to consider this "potential”. An unnecessary prosecution for murder in the first degree with its attendant complications and extreme repercussions could thus be avoided.[2]

. The prosecution represented during oral argument that the grand jurors have already been instructed to disregard any publicity about this case. If this case had generated an extensive amount of inflammatory publicity about the death penalty, it would be prudent to question the grand jurors generally to determine whether the publicity has affected their ability to fulfill their obligations. Because no such publicity has been shown to exist here, the court need not reach the defense request that jurors be voir dired separately about the impact of potentially prejudicial publicity.

. While the court has no authority to direct the prosecution to charge the grand jurors on extreme emotional disturbance, in the interest of fairness the court advised the parties orally on June 11 of its decision. The defendant was thereby afforded the opportunity to present evidence of extreme emotional disturbance and, if such evidence was presented the prosecution was alerted to the possibility of a dismissal if it failed to appropriately charge the Grand Jury.