OPINION OF THE COURT
Daniel D. Angiolillo, J.
The defendant Carlos Cajigas has been indicted for four counts of murder in the first degree, three counts of murder in the second degree, three counts of attempted robbery in the first degree, three counts of burglary in the first degree, criminal use of a firearm in the first degree, criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree and criminal possession of a weapon in the fourth degree. As of the date of this decision, the People have yet to exercise their option for seeking the death penalty in the instant case. It should be noted that the 120-day period of time in which the People are to make the determination of whether or not to seek the death penalty pursuant to CPL 250.40 (2) has been extended to September 10, 1997.
The defendant has made a motion pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution; article I, §§ 2, 5, 6 and 11 of the New York Constitution; the New York State Civil Rights Law; and CPL 210.35 (4); 190.50 (5) (a) and (c) for an order dismissing this indictment due to defective Grand Jury presentation. The defendant maintains that he was deprived of his right to testify before the Grand Jury and that his State and Federal rights to be free of cruel and unusual punishment as well as his right to a fair trial, equal protection of the law and due process of law have been violated.
In particular the defendant argues that he was deprived of his right to testify before the Grand Jury for the following reasons: by the prosecution commencing the presentation to the Grand Jury before the date indicated in the notice which the defendant received pursuant to CPL 190.50; by the prosecutor not indicating to the defendant the exact charges against him until the morning that he was to testify before the Grand *475 Jury; by the prosecution refusing to stay the Grand Jury proceedings; by the prosecution refusing to advise the Grand Jury with respect to "voluntariness” of the statements made by the defendant; and by the prosecution refusing to render legal rulings when requested by the defendant, prior to his envisioned testimony. For all of these reasons, the defendant argues that he was deprived of his reasonable opportunity to prepare for his testimony and to testify before the Grand Jury. Lastly the defendant indicates that capital cases require a heightened standard of due process.
Before considering the arguments presented by both sides, this court finds that a brief chronology of events is in order.
Mr. Cajigas was arrested at his home on the night of January 15, 1997 for the murder of Kathleen Martyn which was alleged to have taken place at her Pelham Manor home on January 6, 1997. On January 16, 1997 the Capital Defender’s Office was notified of an expected arraignment by the local court. Pursuant to an agreement between the Capital Defender’s Office and Westchester Legal Aid Society, the Legal Aid Society commenced representation of defendant. On the evening of the 16th the Honorable Stephen Huff, after making inquiries pursuant to section 35-b of the Judiciary Law, confirmed that Mr. Cajigas was entitled to capital representation.
Following this arraignment on January 16, 1997, a felony hearing was conducted and the defendant was held for the action of the Grand Jury. Thereafter, in a letter dated January 23, 1997 the defendant indicated his intention to testify before the Grand Jury. On that same date the defendant, in a separate letter, asked for specific notice of the charges which would be presented to the Grand Jury and in particular requested notice with respect to whether or not the prosecution would be seeking an indictment for murder in the first degree. The People responded in a letter dated February 10, 1997 advising the defendant in the following fashion: "We wish to advise you that the above-entitled matter will be presented to the Grand Jury of this County on Wednesday, February 26, 1997, at 9:00 A.M.” That letter gave no details with respect to what charges would be presented to that Grand Jury. (See, defense exhibit D.) In a letter dated February 20,1997 the defendant confirmed his intention of testifying before the Grand Jury but requested an adjournment of the Grand Jury presentation. In this letter the defendant waived his rights under CPL 190.80, requested that he be given a copy of the autopsy report, requested disclosure of any exculpatory evidence, and further requested that all evidence in the case be preserved.
*476 On February 24, 1997 the defense submitted an order to show cause to the Honorable John R. LaCava seeking various preservation orders, as well as the unsealing of the search warrants in the instant case, the disclosure of the autopsy report and a request that a Huntley hearing be held preindictment. The court made this order to show cause returnable on Tuesday, February 25, 1997, at 3:00 p.m. On that same day, February 25, 1997, the defendant received the prosecutor’s affirmation in opposition to the order to show cause. These papers revealed that the Grand Jury presentation had already commenced and that witnesses had already testified with respect to the defendant’s alleged statements. On February 25, 1997 the Honorable John R. LaCava rendered a decision on this matter which was filed and entered on February 26, 1997. In this decision Judge LaCava found, inter alia, that "defendant’s application to stay further proceedings by the Grand Jury pending the determination of the suppression issues is denied as moot.” The court further noted that the defendant had not advanced any authority which would have allowed such a drastic step.
On the morning of February 26, 1997 the defendant was apprised by the prosecutor’s office that it would be seeking an indictment for murder in the first degree. Based upon all of the foregoing, at approximately 2:00 p.m. on February 26, 1997, the defense decided that, while the defendant would not technically withdraw his application pursuant to CPL 190.50, he would not be exercising his right to testify before the Grand Jury. The reasons were stated in a letter which was given to the Assistant District Attorney at that time.
The defendant’s arguments are that he was not given a reasonable opportunity to testify given the chronology of events in this case, that his request for a delay in the Grand Jury presentation was reasonable considering the circumstances, that he was denied due process of law inasmuch as he was not given reasonable time to appear, that he was denied the right to present mitigating evidence to the Grand Jury which he believed to have been admissible, that the People failed to give adequate notice with respect to the seeking of an indictment charging the defendant with murder in the first degree and also refused to reply to his application for evidentiary rulings in advance of his testifying before the Grand Jury. The defendant also maintains he was unfairly prejudiced by the denial of his request to unseal the search warrants in the instant case.
*477 It is the contention of the defendant that the reasonableness of the opportunity to testify depends upon the facts and circumstances of the individual case. In this case he asserts the allegedly defective notice that he received pursuant to CPL 190.50, coupled with the People’s failure to tell him whether or not he would be charged with murder in the first degree until the actual morning of his scheduled testimony, resulted in an unreasonable opportunity to testify.
The defendant concedes he was given notice by the prosecutor on February 10, 1997 that the "matter would be presented to the Grand Jury on Wednesday, February 26, 1997 at 9:30 A.M.” Defendant asserts the notice was defective as he was not advised that the presentation had actually begun on Friday, February 21, 1997. The notice served could have been more artfully phrased. However, any impression it may have imparted that testimony would not be presented prior to February 26, 1997 did not thereby cause such notice to be defective.
CPL 190.50 (5) (b) requires the People to give a defendant who has given the requisite written notice of his desire to testify before the Grand Jury "notice that he will be heard by the grand jury at a given time and place.” A defendant does not have a right to be informed of the manner in which a Grand Jury presentment will be made. (People v Adessa, 89 NY2d 677, 683 [1997]; People v Stepteau, 81 NY2d 799 [1993].) A defendant merely has a right to be heard by the Grand Jury prior to that body being instructed on the law, deliberating and voting on the charges under consideration. (People v Evans, 79 NY2d 407 [1992]; People v Stepteau, supra.)
The defendant was given notice on February 10, 1997 of his opportunity to appear at the Grand Jury on the scheduled date of February 26, 1997 and testify before that body. That is the limit of his rights pursuant to CPL 190.50 (5). (See, People v Adessa, supra.) Defendant received approximately 16 days’ advance notice of the time he would be heard. The notice provided was completely adequate and reasonable given the circumstances of this case. (See, People v Rivera, 232 AD2d 584 [2d Dept 1996], lv denied 89 NY2d 928; People v Pugh, 207 AD2d 503 [2d Dept 1994]; People v Johnson, 168 Misc 2d 798 [Sup Ct, Kings County 1996].) In People v Johnson (supra), a capital case, the court held a seven-day notice was a reasonable period of time within which to exercise the right to testify before the Grand Jury.
This court further finds that the second aspect of this attack on the People’s notice is also without merit. The defen *478 dant’s contention that he was entitled to notice with respect to the charges which are about to be presented to the Grand Jury is not valid. The Appellate Division, Second Department, has found in a series of cases that a defendant is not entitled to notice with respect to the actual offenses which are to be presented to the Grand Jury other than what appears on the face of the felony complaint. (See, People v Perez-Tavares, 238 AD2d 446 [2d Dept 1997]; People v Guzman, 233 AD2d 527 [2d Dept 1996], lv withdrawn 89 NY2d 1012; People v Hernandez, 223 AD2d 351 [1st Dept 1996]; People v Choi, 210 AD2d 495 [2d Dept 1994], lv denied 85 NY2d 971; People v Feliciano, 207 AD2d 803 [2d Dept 1994], lv denied 84 NY2d 1031.) Therefore the defendant’s application with respect to any deficiency concerning being apprised of the possibility of an indictment charging murder in the first degree is found to be totally without merit.
A defendant is not entitled to receive advance evidentiary rulings from the People with regard to his prospective testimony. Nor is a defendant entitled to insist that any particular legal instruction be provided to the grand jurors. "Because Grand Jury proceedings are conducted by the prosecutor alone, this function [legal advisor] confers upon the prosecutor broad powers and duties, as well as wide discretion in presenting the People’s case (see, People v Di Falco, 44 NY2d 482, 487). In addition to providing legal instruction to the Grand Jury, the District Attorney determines what evidence to present to that body and what evidence should be excluded (see id., at 486-487).” (People v Huston, 88 NY2d 400, 406 [1996].) In the exceptional case a request may be made to the empaneling Judge for a ruling on a question relating to a defendant’s prospective Grand Jury testimony. (See, People v Smith, 87 NY2d 715 [1996]; People v Stepteau, supra.)
Should the People fail to exercise completely impartial judgment and discretion (People v Huston, supra), this court would address the issue upon review of the Grand Jury presentation. Of course, on a motion to dismiss pursuant to CPL 210.35 (5), there must be an articulable likelihood or possibility of prejudice to a defendant by the presentation, some specific identifiable theory of prejudice, to warrant dismissal. (People v Adessa, supra.)
An additional compelling reason for not providing advance evidentiary rulings and disclosure of the legal instructions to be provided to the grand jurors is that the Legislature has specifically mandated that Grand Jury proceedings are secret. *479 (CPL 190.25 [4] [a].) "The advance disclosure to defendant of evidentiary rulings and legal instructions prior to presentation of the case is not permitted by statute. Criminal Procedure Law 190.25(4)(a) provides that 'the nature or substance of any Grand Jury testimony, evidence, or any decision, result or other matter attending a Grand Jury proceeding’ may not be disclosed by a prosecutor except in the lawful exercise of his duties.” (See, People v Bell, NYLJ, June 16, 1997, at 32, col 5.) Clearly disclosure of the Grand Jury procedure would interfere with that body’s freedom to operate in secret. (See, People v Lancaster, 69 NY2d 20 [1986], cert denied 480 US 922; People v Suarez, 122 AD2d 861 [2d Dept 1986], lv denied 68 NY2d 817.)
This court further finds that when the "Death Penalty Statute” was enacted by chapter 1 of the Laws of 1995 extensive amendments were made to the Penal Law and the Criminal Procedure Law. However, none of those amendments affected the Grand Jury process nor the discovery process. It must be assumed that the New York State Legislature purposely did not amend those articles which dealt with both the Grand Jury proceedings and the discovery process. This court finds that there was no obligation on the People to reply to the defense application for advance evidentiary rulings nor for them to indicate in writing what instructions would be given to the grand jurors with respect to accessorial liability or to the voluntariness of any alleged statements which were to have been introduced before that body.
Defendant asserts he has a right to present mitigating evidence to the grand jurors; that the People deprived him of an opportunity to present mitigating evidence; and that by denying him such right the grand jurors were denied the possibility of considering a lesser included offense to murder in the first degree. Defendant relies on the holding of People v Sullivan (68 NY2d 495 [1986]) for the proposition that the presentation of mitigating evidence should be allowed in order to support the possibility that an indictment may be handed down charging a lesser offense.
The Court of Appeals in Sullivan (supra) recognized the authority of a Grand Jury to return an indictment charging an offense lesser than that which the evidence presented would sustain. (CPL 190.65 [1].) The grand jurors’ choices are not limited to indictment on the top count the evidence would sustain or returning no true bill; they can return an indictment for a lesser included offense as to which the evidence presented was legally sufficient. Throughout the discussion in *480 People v Sullivan (supra), the Court of Appeals makes reference to legally sufficient evidence, that is competent evidence relevant to establish every element of an offense charged and defendant’s commission thereof. (CPL 70.10, 190.65 [1] [a].)
"A grand jury may hear and examine evidence concerning the alleged commission of any offense prosecutable in the courts of the county * * * A district attorney must submit to a grand jury evidence concerning a felony allegedly committed by a defendant who, on the basis of a felony complaint filed with a local criminal court of the county, has been held for the action of a grand jury” (CPL 190.55 [1], [2] [a]). A defendant who provides the requisite written notice, appears and executes a waiver of immunity "must be permitted to testify before the grand jury and to give any relevant and competent evidence concerning the case under consideration.” (CPL 190.50 [5] [b] [emphasis added].)
The Grand Jury performs a function distinct from that performed by the petit jury. The Grand Jury has performed its function when a determination has been made that there is or is not legally sufficient evidence to establish that an accused has committed a crime. "The Grand Jury is not, of course, charged with the ultimate responsibility of determining the guilt or innocence of the accused [citations omitted]. That duty, in our system, resides with the petit jury, which has the obligation of assessing the evidence in light of the applicable legal rules and determining whether the People have proven the guilt of the accused beyond a reasonable doubt.” (People v Calbud, Inc., 49 NY2d 389, 394 [1980].) While the rules of evidence applicable to the trial of a criminal case are generally applicable to a Grand Jury presentation (CPL 190.30), the Grand Jury presentation does not concern itself with any question that otherwise competent evidence might subsequently be subject to suppression. Exclusionary rules "are very rarely applied to the evidence before grand juries where the procedures and the absence of adversary counsel make the application inappropriate.” (People v Oakley, 28 NY2d 309, 314 [1971].) And one of the most often-cited legal propositions relevant to omnibus motions is that a Grand Jury need not be instructed with the same degree of precision as is required when the court instructs a petit jury. (People v Calbud, Inc., supra; People v Valles, 62 NY2d 36 [1984].) "Except to the limited extent that CPL 190.50 (5), (6) gives the accused the right to present such testimony [exculpatory evidence], the Grand Jury proceeding is not intended to be an adversary proceeding (People v Brew *481 ster, 63 NY2d 419, 422). The Grand Jury and the petit jury are different bodies with different functions * * * Neither do the People have the same obligation of disclosure at the Grand Jury stage as they have at the trial stage (see, Brady v Maryland, 373 US 83; People v Hill, 122 Misc 2d 895, 897).” (People v Lancaster, 69 NY2d 20, 26 [1986].)
The Court of Appeals discussion in People v Lancaster (supra) regarding when the Grand Jury must be instructed on particular defenses is also instructive on defendant’s assertion of a right to present mitigating evidence to the Grand Jury. The Court of Appeals explained that it was beneficial to distinguish between exculpatory defenses, complete defenses that if believed would result in a finding of no criminal liability, and mitigating defenses, those defenses that seek to reduce the gravity of the offense committed. The Grand Jury must be instructed on exculpatory defenses; it need not be instructed on mitigating defenses. (People v Lancaster, supra) The Court of Appeals in People v Lancaster (at 29) held that to require instruction on the defense of mental disease "would be to implicitly accord that body the latitude of electing not to indict an accused based upon the potential assertion of that defense.” Such a possibility would circumvent and frustrate the Legislature’s determination that an individual found not responsible by reason of mental disease or defect be subject to commitment and psychiatric examination. "Moreover, the defense of mental disease or defect presupposes a finding of factual guilt — a finding that the defendant committed the act — before it may be determined that he will not be held criminally responsible for that act [citation omitted]. It is the petit jury, and not the Grand Jury, that is empowered to make such determinations of guilt [citations omitted].” (People v Lancaster, supra, at 29.)
The same analysis is applicable here. To allow the presentation of mitigating evidence before the Grand Jury would implicitly empower the Grand Jury to make the determination of whether or not the defendant should face the possibility of the imposition of the death penalty. The Legislature has vested that authority solely with the District Attorney. (CPL 250.40 [2].) The Grand Jury is empowered to return an indictment for a lesser offense than a murder in the first degree charge sought by the People (People v Sullivan, supra; CPL 190.65 [1]), based on the competent and relevant evidence before it. A defendant is not entitled to present mitigating evidence to the grand jurors in hopes of that body returning an indictment charging a lesser offense. (People v Lancaster, supra, at 30.)
*482 Just as it is the petit jury that is empowered to make a determination of guilt after the presentation of all the evidence at trial, it is the petit jury sitting in a separate sentencing proceeding that considers defendant’s evidence of mitigating factors and determines whether the death penalty should be imposed. (CPL 400.27.)
This analysis is not affected by the general definition of exculpatory evidence as that which is favorable to either guilt or punishment (see, Brady v Maryland, 373 US 83, 87; People v Bryce, 88 NY2d 124, 128) and the recognition that it is the defendant who presents exculpatory evidence to the Grand Jury (see, People v Lancaster, supra). In this regard the exculpatory evidence to be presented to the Grand Jury by a defendant is directed to whether or not he committed the crime charged and not what may be the appropriate punishment for his conduct.
This court is fully aware of a defendant’s right to a meaningful opportunity to testify before a Grand Jury. (See People v Greenfield, 178 AD2d 653 [2d Dept 1991]; People v Oquendo, 172 AD2d 566 [2d Dept 1991].) However, again this court must note the Legislature did not amend CPL 190.50 in any fashion by chapter 1 of the Laws of 1995.
The Grand Jury’s function is to determine whether or not a person should be indicted for a crime based upon the evidence, presented to that body. It does not consider nor should it consider anything with respect to the punishment of that individual. The Grand Jury’s determination is merely the first step in a series of determinations made in the criminal justice system. The fact that the person who is indicted for murder in the first degree could possibly be subjected to the death penalty does not change the ultimate function of the Grand Jury which is concerned with the culpability aspect of that person’s conduct. (See, CPL 190.65 [1].) Indeed the Criminal Procedure Law does not provide any mechanism by which a defendant may present mitigating evidence to the Grand Jury inasmuch as that would only deal with the punishment aspect of the case. The Eighth and Fourteenth Amendments require that only "the sentencer * * * not be precluded from considering * * * mitigating factor[s]” (see, Lockett v Ohio, 438 US 586, 604 [emphasis supplied]). The Grand Jury is not to consider punishment at all. Rather it is "to investigate crimes and determine whether there exists sufficient evidence and a legal reason to believe that a citizen should stand publicly accused of a crime and be subjected to the task of defending against the accusations at trial”. (See, People v Franco, 86 NY2d 493, 499.)
*483 Thus this court finds the defendant’s argument with respect to the propriety of the denial of the defendant’s right to present mitigating evidence before the Grand Jury or for an adjournment or delay in that process for him to be able to accumulate such mitigating evidence is without merit. A defendant’s right to testify before a Grand Jury is purely statutory (CPL 190.50 [5]) and is limited to matters which are relevant to the Grand Jury (see, People v Smith, 87 NY2d 715, 719; People v Harris, 173 Misc 2d 248). This court finds that there is nothing in terms of legislation which has altered the procedures to be followed with respect to Grand Jury proceedings and that there is nothing necessarily "unusual, novel, or 'unprecedented’ ” about a capital offense case which would change those rules. (See, People v Prater, 170 Misc 2d 237, 331; People v Rodriquez, 168 Misc 2d 219.)
This court finds that the defendant’s arguments with respect to the need for a delay in the Grand Jury proceeding to have allowed him more time to prepare his possible testimony before that body is also unwarranted. In this particular case the defendant did bring an order to show cause before the Honorable John R. LaCava which was decided prior to the defendant’s scheduled date of testimony, namely, February 26, 1997. In that particular order to show cause the only ground given for a delay in the proceeding was the fact that the defendant had been denied access to the autopsy report. The cases cited by the defendant for the court’s exercise of discretion to have Grand Jury presentations delayed and/or adjourned all concern themselves with situations that are quite different from those presented in the instant case. The cases cited by the defendant deal with a defendant being physically incapacitated and attorneys being unavailable. Clearly that is not the case presented before this court with respect to the instant indictment. Rather the defendant argues that he should have been given the delay to properly prepare for his testimony before the Grand Jury based upon his belief that article 240 which covers discovery should be expanded to give him expanded rights and "heightened due process” merely because of the possible specter of the death penalty.
This court finds that the defendant was on notice going back to his original arraignment on January 16,1997 that this could very well be a capital offense matter and that he received his notice pursuant to CPL 190.50 16 days before his scheduled date to appear before the Grand Jury. The fact that a longer time frame would have been preferred by the defendant for *484 strategy, assessing evidence and determining whether or not he should testify before the Grand Jury and in what respects he should be allowed to testify does not come close to the level of a failure to afford him the due process of law which is alleged to have taken place in the moving papers.
A claim of "heightened due process” cannot alter the Criminal Procedure Law or Penal Law with respect to the defendant’s rights. Clearly the United States Supreme Court in California v Ramos (463 US 992) indicated that there should be a greater degree of scrutiny with respect to capital offense cases. However that scrutiny is only to take place "once it has been determined that the defendant falls within the category of persons eligible for the death penalty.” (See, California v Ramos, 463 US 992, 999.) Thus the strict scrutiny required by the United States Supreme Court and Federal and State law does not apply to an early stage of the proceedings in a criminal case in which a person will be charged with murder in the first degree. The Constitution does not require that a defendant be exempted from the provisions of the Criminal Procedure Law merely because he ultimately may be found guilty of murder in the first degree and thereafter possibly subjected to the death penalty.
This court finds the argument that the defendant was refused his application for a stay or delay of the Grand Jury presentation and thus denied his due process rights to be without merit. There is no authority for the proposition that a stay should be granted to a defendant under the premise that if the Grand Jury proceedings were to be delayed he might come up with some useful information regarding whether or not he should testify and as to what aspects of the case he should be allowed to testify. Clearly this was never the intent of the New York State Legislature when it passed chapter 1 of the Laws of 1995.
The defendant was not prejudiced by the failure of the People to go along with a delay in the Grand Jury presentation. Rather it should be expected that the criminal process would run its ordinary course in the absence of some extraordinary reason which would necessitate a delay or adjournment in that process such as the inability of a defense attorney to be available, the illness of a crucial witness, the unavailability and/or illness of the defendant or similar occurrences of that magnitude. Delays should not be granted merely to afford a defendant a more desirous position with respect to assimilating evidence and assessing whether or not he should testify before a Grand Jury. This court has reviewed cases in which similar *485 arguments have been presented to courts and has found that the overwhelming majority of case law supports the position taken by this court (see, People v Rodriquez, supra; People v Bell, NYLJ, June 16, 1997, at 35, col 5, supra; People v Harris, supra).
Lastly, the defendant’s original motion and in particular his reply papers stress the argument that he was unfairly prejudiced by the denial of his request to unseal the papers with respect to the search warrants in the instant case. While it is clear that the defendant did seek the unsealing of search warrants in his preindictment motion, he did not use that request as a basis for a delay pursuant to CPL 190.50. The decision of the Honorable John R. LaCava, which was rendered on February 26, 1997, is the law of the case with respect to the defendant’s application. Once again it should be noted that discovery in a criminal proceeding is primarily governed by statute (CPL art 240; People v Copicotto, 50 NY2d 222 [1980]; People v Colavito, 87 NY2d 423 [1996]). Indeed under similar circumstances a defendant was denied his preindictment access to video-taped statements. (See, Matter of Hynes v Cirigliano, 180 AD2d 659 [2d Dept 1992], lv denied 79 NY2d 757.)
Again it should be noted that the New York State Legislature in enacting chapter 1 of the Laws of 1995 the "Death Penalty Statute” made no amendments or revisions of CPL article 240 which covers discovery. Combining this fact with the additional fact that the defendant did not raise the issue of lack of access to the papers on the search warrants in any of his applications pursuant to CPL 190.50 nor in his request for an adjournment and/or delay of the Grand Jury presentation, this court is hard pressed to understand the merit of this application made at this juncture. Defendant, by not raising that issue before Judge LaCava in support of the request to either delay or postpone the Grand Jury proceeding, has waived this particular issue. However even considering this application on its merits, this court finds nothing novel or unusual to the extent that it would rule that the defendant had been deprived of his due process rights because of the denial of his request for the unsealing of certain warrants. Indeed this court itself rendered a decision with respect to the unsealing of warrant papers on April 3, 1997 which is also the law of the case in the instant matter. Therefore the defendant’s application for dismissal of the instant indictment based upon the alleged prejudice occasioned by the denial of his request for unsealing of the search warrant applications is denied.
*486 Accordingly, this court finds that the defendant’s application to dismiss the instant indictment should be denied in its entirety.