OPINION OF THE COURT
Carolyn E. Demarest, J.
Defendant moves pursuant to CPL 210.20 (1) to dismiss the *681 indictment as defective under CPL 210.35 (4) alleging that he was denied his rights under CPL 190.50 to testify before the Grand Jury.
FACTS
Defendant was arrested on July 23, 1999, and charged in a felony complaint with murder in the first degree under Penal Law § 125.27 (1) (a) (vii) (in the course of a robbery) and murder in the second degree under Penal Law § 125.25 (1) (intentional) and criminal possession of a weapon in the second and third degrees. He was arraigned on the felony complaint on July 24, 1999, in Part AR4 in Criminal Court and was assigned counsel, Joel S. Walter, P. C., pursuant to Judiciary Law § 35-b. Jesse A. Young, Esq. was subsequently appointed associate counsel nunc pro tunc. The case was adjourned to July 28 in AP 1, at which time oral cross CPL 190.50 notice was given.
On July 30, 1999, Mr. Young noted by fax the oral agreement of Assistant District Attorney (ADA) Irvin to provide the autopsy report and DD5’s, but indicated they had not yet been received. On August 3, Mr. Young served written CPL 190.50 notice, together with letters dated August 2 addressed to ADA Stanley R. Irvin containing defendant’s waiver of his CPL 180.80 right to release, requests for notice of the charges, a stay of Grand Jury proceedings, disclosure of exculpatory and mitigating evidence and proposed Grand Jury instructions. The letters essentially sought virtually all the evidence to which defendant would be entitled pursuant to CPL article 240 following indictment, but, according to the defense, the demand was not for statutory discovery but was “constitutionally based” pursuant to Brady v Maryland (373 US 83 [1963]). Defendant also requested that “rulings” on his demands be made “sufficiently in advance of the presentation” to permit counsel to advise the defendant whether to testify. These letters were copied to Criminal Court Judge Jerome M. Kay in AP 1.
On August 9,[1] the parties appeared in Criminal Court Part APF-1 before the Honorable Howard Ruditzky. ADA Roland Klengler appeared for the prosecution and both Mr. Walter and Mr. Young appeared for defendant. The defense waived CPL 180.80 “for all purposes for whatever period it is” in order *682 to obtain compliance with the aforementioned letters which were filed with the court. Mr. Young reiterated his demands for “the statutory aggravators” and “some Brady * * * having to do with hits, miss hits, having to do with lineups” in order to present such evidence to the Grand Jury (transcript, at 3-4). The CPL 190.50 notice of intent to testify was reasserted, whereupon the following exchange took place (transcript, at 5-6):
“The Court: You want me to extend 180.80 and instruct the People to give you whatever materials you’re entitled to, [sic] I don’t have to instruct them, [sic] they know that under the law if you don’t get it, you make that application in writing.
“Mr. Walter: We already have, Judge.
“Mr. Young: Yes. In the case law both the New York and Federal Constitution cite as well as the various cases in the series of three letters.
“The Court: What date are we adjourning 180.80? 180.80 is extended.
“Mr. Walter: September 2nd, Judge.
“The Court: To 9/2/99, case adjourned to 9/2/99, for Grand Jury action and for People to comply with defendant’s requests stated in written letter or respond or provide written response and decision here. You have plenty of time, [sic] I think that’s the way to do it.
“Mr. Young: Thank you Judge.
“The Court: Any problems, contact my chambers on notice to the other side. The case is adjourned to AP-1, 9/2/99. It’s remand; is that correct?
“Mr. Walter: That’s correct.
“The Court: Remand continued. You’ll be in touch with my chambers if you have any problems.
“Mr. Walter: Thank you, your Honor.” (Emphasis added.)
On August 11, ADA Stanley Irvin advised the defense attorneys by letter that they had failed to appear for defendant’s previously scheduled Grand Jury testimony on August 10 and that such testimony had been rescheduled for August 12 at 2:00 p.m. The letter cautioned that defendant’s failure to exercise his right to testify at that time would be deemed a withdrawal of his notice, and that since the Grand Jury would expire on August 13, the case would be voted on the 12th or 13th. The letter further advised that the only known Brady or exculpatory evidence was a photographic identification by one *683 witness of a David Sumter as the shooter which was subsequently revoked at the lineup. That same witness later identified defendant at a lineup. Notice was also given that a second witness had also selected the photograph of David Sumter as the shooter. In his “Response” to the instant motion, Mr. Irvin contends this was sufficient information under Brady, although the defense was not provided with the identities of the witnesses who made the “misidentifications.” In the Grand Jury presentation, the witness who identified defendant at the lineup was questioned regarding the prior erroneous identification of someone other than defendant Maurice Davis.
In response to Mr. Irvin’s letter, on August 12, Mr. Young reaffirmed by written notice his client’s intent to testify, accompanied by a letter addressed to “ADA Stanley R. Irvin, Homicide Bureau,” in which he -again stated his view that the Constitution entitled his client to “heightened due process” in the circumstances and recited the direction of “the Honorable Judge Howard A. Ruditsky [sic], in Kings County, Criminal Court, Part AP 1 * * * to comply with our requests enumerated in 3 letters dated August 2, 1999,” noting further that an extension had been granted “for the People to comply with our requests and/or to file a written answer.” The Criminal Court felony complaint record of court action for August 9 bears the endorsement: “Case adj t 9/2/99 for GJA & for v comply with D requests stated in written letter or provide written response in opposition.”
Because a witness could not be produced prior to the expiration of the first Grand Jury which had begun hearing evidence on July 27 (but not, apparently, to accommodate the request of the defendant to delay Grand Jury proceedings or withdraw any presentation that might have been commenced), the case was withdrawn on August 13 and a second presentation was commenced on September 24. That presentation was continued over a period of nearly three months in an effort to provide testimony, at the request of the Grand Jury, from an eyewitness to the shooting who could not be located. At oral argument on April 11, 20Q0, defense counsel Young acknowledged that during this period he was aware the matter was before the Grand Jury but did not know that a second presentation had been commenced. He also indicated that he believed there were charges pending involving two separate homicides.
Well before the vote in mid-December, on November 4, Mr. Young again faxed to ADA Stanley R. Irvin (and copied to the Honorable Justice Michael R. Juviler) a “Re-affirmation of No *684 tice of Intent to Exercise Rights Pursuant to CPL § 190.50,” together with a copy of his August 12 letter to Mr. Irvin reciting Judge Ruditzky’s direction of August 9. The August 12 letter further articulated defendant’s Brady demands for the names, addresses and phone numbers of the eyewitnesses who had made the photographic identification of David Sumter (to remain confidential to counsel), the address and phone number of David Sumter (also to remain confidential to counsel), a copy of the photograph of Sumter and the lineup photos for Sumter and copies of all DOS’s containing statements of those eyewitnesses who identified David Sumter. Mr. Young indicated that the People had failed to comply with the court’s order and that defendant could not, therefore, exercise his rights pursuant to CPL 190.50 and 190.52 at that time. Reaffirming his right to testify and his CPL 180.80 waiver, and noting that the court had granted an extension to September 2, Mr. Young asserted that defendant had not been afforded a reasonable opportunity to appear as a witness in the Grand Jury. There was no reply to defense counsel’s November 4 fax.
In response to a letter from ADA Irvin dated December 1, 1999, advising defense counsel that Mr. Davis would be produced on December 6 to testify and that counsel’s failure to appear at 2:00 p.m. would be considered a waiver of the CPL 190.50 assertion, and further cautioning that the case would then be “voted out,” on December 6, Mr. Young again reaffirmed his CPL 190.50 notice, together with yet another copy of the August 12 letter, indicating noncompliance by the People.
It is undisputed that defense counsel did not appear on four occasions on which defendant’s Grand Jury testimony had been scheduled. It is not clear whether defendant was actually produced on August 10, but on that date and on August 12, December 6, and December 13, defense counsel simply did not show up. In his “Response” to the motion, the District Attorney expresses his indignation that defense counsel failed to contact him regarding “problems” with times or dates. However, it is clear from the letter of August 12, reiterated in the faxes of November 4 and December 6, that defendant had taken the position that more information was due him pursuant to the order of Judge Ruditzky than had been provided and that it was the District Attorney’s burden to act if relief from that order was required.
On December 9, Mr. Irvin sent another letter to defense counsel indicating that defendant would again be produced in the Grand Jury at 10:00 a.m. on December 13. In that letter, *685 apparently for the first time in any recorded form, Mr. Irvin addresses defendant’s requests for “certain pretrial discovery items * * * prior to your client testifying.” Mr. Irvin therein refers counsel to several cases which he contends support his “previously” stated position that such disclosure is not required and indicates that he was only “handed” a copy of the August 8 transcript on December 7. Claiming that Judge Euditzky was not a “proper jurisdiction” for such requests, Mr. Irvin contends that the defendant bore the burden to act to enforce his demands and that his failure to do so constituted “satisfaction.” Again, Mr. Irvin warned that December 13 would be “the last time” defendant would be afforded an opportunity to testify and invited defense counsel to seek further hearing before Judge Euditzky upon personal notice to him.
Defense counsel failed to appear or otherwise act on December 13 and the indictment was voted. Neither side ever sought clarification of, or relief from, the oral order of the Criminal Court of August 9, 1999. The defendant was arraigned in Supreme Court on January 24, 2000. The instant motion was filed on February 1, 2000.
ISSUES
Defendant claims that he was not afforded a reasonable and meaningful opportunity to exercise his right to testify before the Grand Jury because the People’s failure to comply with Judge Euditzky’s order to turn over discovery precluded the defendant from preparing a defense for the Grand Jury.
The People assert in opposition that defendant was produced before the Grand Jury on several occasions, for all of which defense counsel received notice and at none of which did defense counsel appear. Moreover, the People maintain that they advised defense counsel that Judge Euditzky had no jurisdiction to issue an order for pretrial discovery during the Grand Jury proceedings, and that they had no intention of turning over such discovery. This position is first articulated in writing in the letter of December 9. Although the District Attorney asserts such refusal was conveyed orally prior thereto, there was no objection made to Judge Euditzky’s order on the record in open court on August 9 or in other written form prior to December 9. Nor have other transcripts been provided that would indicate any effort by the District Attorney to obtain relief from this order, although several appearances took place in Criminal Court subsequent to August 9, including on September 2 and October 26 before Judge Euditzky. Finally, *686 the People contend that the issue is moot because the defense now, following arraignment on the indictment, has received the Rosario material and, prior to the indictment, had been provided with the Brady material.
Given the language of Judge Ruditzky’s order directing the parties to return to him if any “problems” arose, the ultimate issue is who had the burden to act to clarify whether the People had adequately complied with the court’s order or to seek modification thereof. The People appear to have determined internally that they had no obligation to comply with the defendant’s demands and that they could, therefore, unilaterally disregard the order of the Criminal Court and treat defendant’s continuing reliance on that order as a nullity, insisting that if he did not testify before the Grand Jury in accordance with the People’s schedule, he would forfeit his right to do so. At the same time, the defense followed a course of purposeful neglect in failing to appear at the Grand Jury at the designated time and in failing to raise the People’s alleged noncompliance before the Criminal Court.
LAW
Resolution of defendant’s motion requires this court to examine the nature of the right provided in CPL 190.50 (5). Article I, § 6 of the New York Constitution provides: “No person shall be held to answer for a capital or otherwise infamous crime * * * unless on indictment of a grand jury.” It is well established that such protection is meant to guard against the prosecution of unfounded or arbitrary accusations. (People v Franco, 86 NY2d 493, 499 [1995]; People v Evans, 79 NY2d 407, 414 [1992].) With the adoption of the new Criminal Procedure Law in 1970, the right to indictment was statutorily expanded to afford the accused “arraigned on an undisposed felony complaint” the right to testify before the Grand Jury. (See, People v Evans, supra, at 412.) In what has become a mantra of capital defense litigation, the defendant here insists that because “death is different,” “heightened due process” requires that his CPL 190.50 right include, not only preindictment discovery to which other defendants are not entitled, but also a major role in the Grand Jury presentation itself, including an opportunity to present evidence in mitigation of the charges and legal instructions drafted by defense counsel. (See, e.g., Matter of Brown v Appelman, 241 AD2d 279, 283 [2d Dept 1998]; People v Campos, 176 Misc 2d 637 [Sup Ct, Kings County 1998] [and cases cited therein].)
*687 It is well settled that discovery in a criminal proceeding is entirely governed by statute. (People v Copicotto, 50 NY2d 222, 225 [1980]; Matter of Hynes v Cirigliano, 180 AD2d 659 [2d Dept 1992].) In Matter of Miller v Schwartz (72 NY2d 869, 870 [1988]), it was held that there is no general, constitutional right to discovery in a criminal proceeding. (See also, Matter of Brown v Appelman, supra, 241 AD2d, at 285.) CPL 240.20 (1) and 240.40 (1) provide that discovery on demand or by motion is available only to a defendant “against whom an indictment, superior court information, prosecutor’s information, information, or simplified information charging a misdemeanor is pending.” Missing from the statute is any provision for discovery to a defendant against whom a felony complaint is pending. The Constitution does not require that capital defendants be “exempted from any provision of the Criminal Procedure Law * * * merely because they may ultimately be found to be subject to the death penalty.” (People v Rodriguez, 168 Misc 2d 219, 223 [Sup Ct, NY County 1996]; People v Campos, 176 Misc 2d 637, supra.) There is no provision in the Criminal Procedure Law which would entitle an individual against whom a felony complaint is pending to discovery before he is indicted and there is no authority for directing earlier or expanded discovery for an individual who is facing capital murder charges. (See, People v Prater, 170 Misc 2d 327 [Sup Ct, Kings County 1996]; People v Hale, 167 Misc 2d 872 [Sup Ct, Kings County 1996].) The Legislature’s decision to leave the discovery statute “unaltered is a clear indication that the existing rule is operative in capital cases.” (People v Rodriguez, supra, 168 Misc 2d, at 227; see, People v Cajigas, 174 Misc 2d 472, 485 [Westchester County Ct 1997].) There was, therefore, no legal authority for Judge Ruditzky’s order of August 9 granting general discovery.
The only issue before a Grand Jury in a capital case, as in all Grand Jury proceedings, is whether legally sufficient competent evidence has been presented to support the reasonable belief that a particular crime was committed by the accused. (Cf., People v Huston, 88 NY2d 400, 405-407 [1996]; People v Franco, supra, 86 NY2d, at 499; People v Lancaster, 69 NY2d 20, 25 [1986]; People v Valles, 62 NY2d 36, 38 [1984].) In a capital case, the People must adduce evidence of the aggravating factors that supports the particular murder in the first degree allegations; however, there is no duty to present evidence in mitigation at the Grand Jury. Only where there exists exculpatory evidence that might obviate a prosecution *688 altogether is it the duty of the People to present such evidence to the Grand Jury or make it available to the defense for use in the Grand Jury. (People v Mitchell, 82 NY2d 509 [1993]; People v Lee, 178 Misc 2d 24 [Sup Ct, Nassau County 1998]; People v Hunter, 126 Misc 2d 13 [Sup Ct, NY County 1984].) Such limitation also applies to the obligation to instruct the Grand Jury regarding defenses. (People v Valles, 62 NY2d 36, supra; but see, concurring opinion of Kaye, J., at 39-41.) Contrary to defendant’s contentions, Brady v Maryland (supra) creates no greater obligation at the Grand Jury stage. (People v Lancaster, supra, at 26.)
Well prior to the vote in the Grand Jury, defense counsel knew of the “miss-hits” by witnesses to the shooting. They had the name of the person whose photograph had been purportedly mistakenly identified, but did not know the names of the eyewitnesses. During the pendency of this motion, open file discovery has been provided, including, with the agreement of the District Attorney, the names of those witnesses. It is, therefore, no longer necessary for this court to rule on defendant’s discovery demands except to limit disclosure, as this court deems appropriate, to only the names of the witnesses, without the addresses and telephone numbers demanded by the defense.
In response to defendant’s demands for “the aggravators,” the court finds defendant here was adequately apprised in the felony complaint itself of the nature of the accusations that would be presented to the Grand Jury that could potentially result in a murder in the first degree indictment. The felony complaint not only specified the first degree murder charge under Penal Law § 125.27 (1) (a) (vii), but also described the aggravating conduct which gave rise to the second murder in the first degree charge under count 2 of the indictment (in the course of burglary in the first degree), that “Defendant did * * * push into the above location, demanded money from Willie McCleod while displaying a gun, and did take a sum of U.S. currency from Willie McCleod.” Beyond that, defendant had no right to further notice regarding the charges. (People v PerezTavares, 238 AD2d 446 [2d Dept 1997]; People v Cajigas, supra, 174 Misc 2d, at 477-478.)
Nor was defendant entitled to have the Grand Jury instructed in accordance with his requests or even to receive advance rulings on his requests. (People v Cajigas, supra, at 478-479.)
As heretofore noted, the demands articulated in defense counsel’s letters of August 2 have been raised repeatedly in *689 cases brought under the still-new statute in New York providing for the death penalty. The decisions are uniform in denying the relief requested and, indeed, this court has rendered a decision denying the very relief requested here, dismissal of the indictment for failure to provide CPL 190.50 (5) rights, upon the well-reasoned precedent of courts of concurrent jurisdiction. (See, People v Campos, 176 Misc 2d 637, supra.) In Campos, as here, the District Attorney had failed to respond to defendant’s demands and the defense insisted that defendant could not testify without the requested information. Unlike the instant case, however, Campos refused to waive CPL 180.80 and the indictment was voted at the last moment without the defendant’s testimony so as to avoid release of the accused. Moreover, and most significantly, no court order had been obtained by either side with respect to the requested items.
The gamesmanship evident in the instant scenario, on both sides, so inappropriate to the seriousness of the charges, continues to exasperate the judiciary. As this court found in Campos (supra), there is no support in precedent for defendant’s demands. However, as noted by defense counsel Young at oral argument, the United States Supreme Court has yet to rule on the issues presented in the context of capital litigation under New York’s statute and, given the stakes to defendant,[2] it is appropriate to preserve the issues. There is no excuse for the District Attorney’s continuing failure to respond to the requests in a timely manner.
The District Attorney was in receipt of defense counsel’s letters of August 2 well in advance of the August 9 appearance. Despite ADA Irvin’s protestations of lack of notice, those letters were addressed to him personally and he is presumed to have received them. The ADA who appeared before Judge Ruditzky on behalf of the prosecution on August 9, Roland Klengler, said absolutely nothing in response to defense counsel’s application; he did not even object to the court’s direction to comply with the requests contained in the letters of August 2 which were filed with the court. It is clear from Judge Ruditzky’s oral order and his endorsement on the file that the District Attorney had the burden to “comply” or “provide written response in opposition.” He did neither.
The People argue that the Criminal Court was not the “proper jurisdiction” to hear the issue of discovery. They cite *690 no authority other than to reiterate their contentions that defendant was not entitled to preindictment discovery. What they apparently believe is that the Criminal Court was not the proper forum in light of the presentation pending before the Grand Jury in Supreme Court. However, CPL 240.20 and 240.40 expressly provide that discovery may be sought when a prosecutor’s information, information or simplified information charging a misdemeanor is pending; presumably, such motion would be properly returnable in the Criminal Court which has jurisdiction over such accusatory instruments. Prior to indictment, it was exclusively the Criminal Court before which defendant was appearing; it was Criminal Court that had issued the securing order for defendant, and it was Criminal Court that had jurisdiction over the felony complaint. The defense’s effort to address, at a scheduled appearance in Criminal Court, written requests which had gone unanswered by the District Attorney cannot reasonably be perceived as a devious attempt to sandbag the prosecution as ADA Irvin suggests in his “Response,” particularly since the purpose of such appearance, as noted by ADA Klengler, was the waiver of CPL 180.80 so that defendant could prepare to testify at the Grand Jury.
As the authority cited by the People, Matter of Brown v Appelman (241 AD2d 279, supra), makes clear, even.the Supreme Court was without jurisdiction to order preindictment discovery that was not authorized constitutionally or by statute. What the Brown case makes equally clear, however, is that, faced with the unauthorized order of August .9, it was incumbent on the People, as the “aggrieved” party, to act to seek a reversal of such order in the Criminal Court or to seek to prohibit the enforcement of that order pursuant to CPLR article 78. (See also, Matter of Pirro v LaCava, 230 AD2d 909 [2d Dept 1996].) Alternatively, the People could have moved for a ruling before the Supreme Court Justice assigned to supervise Grand Jury proceedings. (CPL 10.20 [2].) But the People did none of these things, choosing instead to disregard the order of the Criminal Court and substituting their own judgment for that of the courts. Such blatant disregard for due process and the authority of the courts cannot be tolerated.
Finally, the District Attorney asserts that because the defendant has been indicted, the issues are moot and the motion should not be addressed. Such argument is specious, begs the question and smacks of hubris. Again the authority cited, Matter of Brown v Appelman (supra), does not support the People’s position. In Brown, the appellate court expressly rejected the *691 identical mootness argument, finding that the issues raised were substantial, novel and likely to evade judicial review if not addressed (241 AD2d, at 282). The law requires that “a motion to dismiss an indictment that has been obtained in violation of the provisions of CPL 190.50 (5) (a) must be granted upon a timely motion” and the failure to do so requires the vacatur of conviction and dismissal of the indictment following trial. (People v Costas, 248 AD2d 482, 483 [2d Dept 1998]; see also, People v Huston, 88 NY2d 400, 411, supra [in which the Court stated, “conviction after trial does not cure defective Grand Jury proceedings”].) Given the protracted proceedings prescribed for prosecution of a capital case (see, CPL 270.16, 270.20, 400.27), dismissal of defendant’s motion as moot would indeed be folly.
CONCLUSION
Defendant’s motion to dismiss the instant indictment as having been obtained in violation of his rights under CPL 190.50 (5) is granted. The court’s decision is predicated exclusively upon the People’s failure to comply with or otherwise act with respect to the order of August 9, 1999, entered in Criminal Court. As noted, since the filing of the instant indictment, all the requested discovery has been provided with the exception of addresses and telephone numbers for witnesses and the individual misidentified. This court finds such information should remain confidential to the prosecution at this time. The People have leave to re-present.

. The transcript of this appearance is dated August 8, apparently in error, since both counsel and the court file indicate the appearance was on August 9.

. As of this writing, the District Attorney has not yet given notice of an intent to seek the death penalty.