OPINION OF THE COURT
Albert Tomei, J.
This motion was brought before the court sitting in the Miscellaneous Part. Based on the proposed order, the defense’s *873 memorandum of law in the form of a letter to the court, the People’s affirmation in opposition, and oral argument, the underlying facts are as follows:
On October 14, 1995, one Steffan Tanner disappeared from his home in Brooklyn. Shortly thereafter, in connection with his disappearance, a felony complaint and a warrant of arrest were issued by the Criminal Court in Kings County accusing the defendant of murder in the second degree and kidnapping in the first degree. It was the People’s theory that the defendant murdered Mr. Tanner in Brooklyn and transported the body to Kentucky where he dismembered it and scattered the pieces in unknown locations.
At the time the felony complaint was issued the defendant was in Lexington, Kentucky, where he is now incarcerated. The Kings County District Attorney’s Office is involved in proceedings to extradite him; the defendant is resisting.
An investigation into the murder of Mr. Tanner is being conducted by the New York City Police Department, the Office of the Medical Examiner and other law enforcement agencies in Brooklyn and Lexington, Kentucky. Evidence in the possession of these agencies includes an automobile that belonged to Mr. Tanner; the contents of the automobile; forensic evidence collected from the automobile; forensic evidence gathered at Tanner’s apartment and garage; statements made to law enforcement agents by the defendant and other witnesses; physical evidence recovered from locations in Kentucky; evidence taken from the defendant; photographs and drawings related to the case; property recovered from the defendant’s home; and tapes and recordings made in connection with the case.
In October 1995, the Kings County District Attorney confirmed in response to an inquiry by the court that an investigation was being undertaken to determine whether the defendant should be charged with capital murder as defined in section 125.27 of the Penal Law. Pursuant to section 35-b of the Judiciary Law, after determining that there was a reasonable likelihood that the defendant would be charged with capital murder, the court appointed counsel from the Capital Defender’s Office.
On November 6, 1995, defense counsel moved the court by order to show cause for an order to preserve evidence. The proposed order would require the "Office of the Brooklyn *874 District Attorney and its agents, officials and representatives of all law enforcement agencies including the New York City Police Department, and any other agency participating in the investigation surrounding the arrest of Mr. Hale to preserve any and all evidence, documents, and tapes generated, made, or collected during the investigation and arrest, including but not limited to ' "911” transmission tapes, scratch and/or rough notes made by any police officers or law enforcement agents participating in the investigation or arrest, any physical evidence, and contact sheets of any photographs taken by any law enforcement agents or representatives pertaining to the arrest or investigation in the above-captioned case.’ ”
It is the defendant’s position that the court is mandated to issue the order to preserve as a corollary to the defendant’s right to discovery under CPL article 240. He argues that unless the People’s obligation to preserve evidence is embodied in a court order, the defense’s ability to inspect and test evidence will be impeded. Defense counsel asserts that, in a potentially capital murder case, the court is required to apply a "heightened standard of due process” which extends to the defendant’s right to "examine, test, inspect and otherwise confront the evidence against him.”
In opposition to the proposed order, the People advance three arguments. First, they contend that the duty of the People to preserve potentially useful evidence is not absolute, but is governed by Rosario and Brady principles. Second, the People reject the defendant’s attempt to hold the Office of the District Attorney responsible for directing the manner in which other law enforcement agencies collect and test evidence. Finally, the People contend that the use of a court order to enforce the defendant’s discovery rights would expose the People to the harsh penalty of contempt, rather than more flexible sanctions which are appropriate under Rosario and Brady law.
The issue before the court is whether, after a felony complaint has been filed in a possible capital murder case, the defense is entitled to this order to preserve. An analysis of this issue must begin with the pertinent statutes governing discovery, since discovery in a criminal proceeding is governed entirely by statute (People v Copicotto, 50 NY2d 222; Matter of Hynes v Cirigliano, 180 AD2d 659).
CPL 240.20 entitled "Discovery; upon demand of defendant” and 240.40 entitled "Discovery; upon court order” limit the class of defendants entitled to discovery to those "against whom an indictment, superior court information, prosecutor’s infor *875 mation, information, or simplified information charging a misdemeanor is pending”. Notably absent from this list of accusatory instruments are felony and misdemeanor complaints.
The logic driving this omission is evident. While both a felony complaint and a misdemeanor complaint serve to commence a criminal action, neither is a basis for prosecution (CPL 1.20 [7], [8]). The primary purpose of the felony complaint "is to determine whether the defendant is to be held for the action of a grand jury with respect to the charges contained therein” (CPL 180.10 [1]). In presenting evidence to the Grand Jury, the District Attorney is not bound by the charges in the felony complaint, but may include evidence of additional incidents, more serious crimes, or additional complainants. Moreover, the felony charges contained in the felony complaint may be reduced to misdemeanors or petty offenses. By restricting discovery to those individuals already indicted, the Legislature sought to avoid unnecessary, wasteful, and incomplete discovery (see, e.g., People v Perrotti, 157 Misc 2d 927; People v Ramirez, 129 Misc 2d 112; People v Arturo, 122 Misc 2d 1058).
Although the Legislature enacted many changes to the Criminal Procedure Law to implement the death penalty, CPL article 240 was not amended (see, L 1995, ch 1). Accordingly, an individual facing a capital murder charge is not entitled to discovery until he is indicted. The defendant herein has been charged in a felony complaint with murder in the second degree and, therefore, is not entitled to an order for discovery (see, Matter of Hynes v Cirigliano, 180 AD2d 659, supra).
To avoid the strictures of the discovery statutes, the defense maintains here that the defendant is asking not for an order for discovery but for an order to preserve. The requested relief, according to the defense, is not proscribed by the CPL and is essential to protect the defendant’s right to discovery when that right ripens.
It is well settled that the prosecutor is under a duty to preserve evidence even before the defendant’s right to discovery attaches. "A necessary corollary of the duty to disclose is the obligation to preserve evidence until a request for disclosure is made * * * Any other rule would facilitate evasion of the disclosure requirements.” (People v Kelly, 62 NY2d 516, 520 [citations omitted]; People v Martinez, 71 NY2d 937.) Inasmuch as the duty to preserve already exists under law, independent of any court order, it is unnecessary and inappropriate for the court to order the District Attorney to do that which *876 he is already under an obligation to do under Brady and/or Rosario principles, or pursuant to the discovery statute.
Contrary to the defendant’s suggestion, the denial of this motion does not relieve the People of their obligation to act in good faith to preserve exculpatory evidence; additionally, it does not leave the defendant without a remedy in the event that the People fail to fulfill their obligations. Should the District Attorney’s Office fail to meet its obligations to preserve exculpatory evidence or Rosario material, the defendant may request and the court may impose any necessary sanctions. (See, e.g., People v Roe, 196 AD2d 899 [providing for adverse inference charge]; People v Johnson, 184 AD2d 782 [providing for preclusion of testimony].)
Furthermore, as defense counsel readily conceded during oral argument, the order to preserve does not merely require the People to meet their obligations to preserve evidence, but encompasses a stay of all testing and investigation so as to allow the defense access to the evidence for the purpose of assessing its quantity and character. The defense has not, and cannot cite any authority for this unprecedented challenge to the People’s right to proceed with an ongoing, preindictment investigation.*
In sum, the discovery provisions of the CPL, as well as the obligations detailed in Brady, Giglio and Rosario, describe the totality of the People’s obligations to preserve and disclose evidence. There is no basis in the law of New York State, or in Federal constitutional law, for the order sought by defendant.

 It should also be noted, as the People have argued, that the proposed order would have the patently unfair effect of potentially subjecting the People to criminal contempt for the actions of other prosecutorial and law enforcement authorities over which they have no control.