OPINION OF THE COURT
Albert Tomei, J.
It is alleged that on October 10, 1999, Mujahideen Muhammed (hereinafter, defendant) intentionally killed Julio *592 Gonzalez in the course of an attempted robbery. By Kings County indictment number 8393/99, defendant has been charged with murder in the first degree, murder in the second degree (three counts), attempted robbery in the first degree (two counts), criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. Defendant seeks to have the indictment dismissed because, he claims, his right to counsel and his right to testify before the Grand Jury were violated.[1]
Upon review of the defendant’s motion papers and the District Attorney’s opposition thereto, the court makes the following findings of fact and conclusions of law:
Findings of Fact
Defendant was arrested on October 19, 1999 and charged by felony complaint with murder in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. He was arraigned on the felony complaint in Criminal Court on October 20, 1999. At the arraignment, defendant was represented by counsel (hereinafter, assigned counsel), assigned pursuant to County Law article 18-B, which provides for the assignment of attorneys to represent indigent criminal defendants; this attorney was a member of a panel of attorneys deemed qualified to be assigned to homicide cases, but he did not belong to a panel of attorneys specifically qualified to represent capital defendants.
The arraignment Judge asked the Assistant District Attorney in the Arraignment Part, “Has your office made a determination as to whether this charge is going to be a capital case or not?” The Assistant indicated that she did not know, prompting the Judge to arrange for a second call of the case so that the Assistant could make an inquiry. At the second call, the Judge stated, “I stopped the process before because I asked a question that I am required to ask. Is this a capital case?” The *593 Assistant responded, “This defendant is charged with murder, murder 2. It is not a capital case.”[2]
In apparent reliance upon the Assistant District Attorney’s representation that the District Attorney would not seek to charge defendant with a crime punishable by death, the court proceeded with the arraignment and did not assign the Capital Defender, the Legal Aid Society’s Capital Defense Unit, or counsel belonging to a panel of attorneys qualified by the Capital Defender to represent capital defendants, as provided by Judiciary Law § 35-b, which governs the appointment of counsel in capital cases. Defendant pleaded not guilty. The Assistant served defendant with notice of his right to testify in the Grand Jury, and his assigned counsel indicated that he was not filing notice of defendant’s intention to so testify. Defendant was remanded and the case was adjourned to October 25, 1999. Pursuant to the time limitations of CPL 180.80,[3] the District Attorney had until 1:53 p.m. on October 25, 1999 to file an indictment or provide written certification that the Grand Jury had voted an indictment; otherwise, the defendant would be entitled to be released from custody.
A different Assistant District Attorney was assigned to present the case to the Grand Jury (hereinafter, Grand Jury Assistant). According to her affirmation in opposition to the instant motion, most of the evidence in the case was presented to the Grand Jury on Friday, October 22. On that date, she informed an attorney assigned to the Capital Defender Office (hereinafter, Capital Defender) that defendant’s case was considered to be a potential first degree murder case. According to the Grand Jury Assistant, she arranged to meet with the Capital Defender on Monday, October 25, “to determine if he would then become attorney of record or if [assigned counsel] would remain attorney of record for the defendant.”[4]
Mid-morning on October 25, the Grand Jury Assistant appeared in the Criminal Court part to which defendant’s case had been adjourned pending Grand Jury action (hereinafter, AP-1). In AP-1, she learned that defendant’s assigned counsel had already appeared in court, and that an Assistant District Attorney assigned to AP-1, for reasons unknown, had reiter *594 ated to him that “we [the District Attorney’s Office] were not investigating this case as a possible murder one case.”[5] On the Record of Court Action form contained in the court file is a handwritten notation indicating that the Capital Defender had been present in AP-1 at some point during the morning of October 25; it read, “Capital Defender was here earlier to appoint — he left.”
In her affirmation, the Grand Jury Assistant asserts that when she learned that the court had been misinformed, she advised the Judge in AP-1 that the case was, in fact, a potential first degree murder case, though this statement was not made on the record.[6]
The Grand Jury Assistant paged defendant’s assigned counsel and informed him that the case potentially could result in a charge of first degree murder. The Grand Jury Assistant informed assigned counsel and the Capital Defender, who had discussed the case with each other earlier in the day, that if they wished to have more time to consult with each other and defendant about the case, she would delay presenting the charges to the Grand Jury for a vote, provided that defendant agreed to waive his right to be réleased pursuant to CPL 180.80, which was to become effective at 1:53 p.m. on that date. Defendant did not waive his rights under CPL 180.80. At no time did counsel file notice of defendant’s intention to testify in the Grand Jury.
The Grand Jury Assistant presented the case to the Grand Jury for a vote prior to the commencement of its lunch hour at 1:00 p.m. on October 25. The Grand Jury returned a true bill on counts charging murder in the first degree, murder in the second degree (three counts), attempted robbery in the first degree (two counts), criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. On November 17, 1999, at the arraignment on the indictment charging defendant with first degree murder, capital counsel was assigned pursuant to Judiciary Law § 35-b.
Conclusions of Law
According to defendant, he was effectively denied his right to testify in the Grand Jury pursuant to CPL 190.50 as well as his right to effective assistance of counsel because, as a consequence of the District Attorney’s misrepresentation that defen *595 dant would not be subject to a capital murder charge, defendant was provided with counsel pursuant to County Law article 18-B, and not the capital counsel to which he was entitled, pursuant to Judiciary Law § 35-b. Defendant contends that the improper denial of capital counsel deprived him of effective assistance of the appropriate, qualified capital counsel in deciding whether to exercise his right to testify; whether to make certain requests of the Grand Jury Assistant concerning discovery issues and evidentiary matters; and whether to file certain motions with the supervising Judge of the Grand Jury. The court finds that defendant had a full and fair opportunity to exercise his right to testify, and that, under the circumstances, the appointment of an attorney pursuant to County Law article 18-B provided defendant with competent and effective counsel.
Judiciary Law § 35-b, entitled “Assignment of counsel and related services in criminal actions in which a death sentence may be imposed,” provides, in pertinent part, as follows: “in any criminal action in which a defendant is charged with murder in the second degree as defined in section 125.25 of the penal law and the district attorney confirms upon inquiry by the court that the district attorney is undertaking an investigation to determine whether the defendant can or should be charged with murder in the first degree as defined in section 125.27 of the penal law and the court determines that there is a reasonable likelihood the defendant will be so charged, if the defendant is or becomes financially unable to obtain adequate representation * * * at any time * * * prior to judgment * * * the defendant shall be entitled to the appointment of counsel * * * in accordance with the provisions of this section.” (See, Judiciary Law § 35-b [1].) The law provides that the appropriate counsel to be assigned in cases in which the death penalty may be imposed are the Capital Defender; private counsel who have been qualified to represent capital defendants according to criteria developed by the Capital Defender; or a Legal Aid Society or Public Defender office designated by the Capital Defender. (See, Judiciary Law § 35-b [2], [5].) However, the law also provides that, “[i]n the event no such attorney is available, the court may appoint an attorney eligible for appointment pursuant to article eighteen-B of the county law who is competent to represent defendants charged with murder and other serious felonies.” (Judiciary Law § 35-b [2].) In addition, the law provides that if a defendant in a potential capital case has not been previously assigned capital counsel, “the capital *596 defender office may provide or arrange to provide temporary legal representation to the defendant.” (Judiciary Law § 35-b m.)
In the instant case, defendant was charged by a felony complaint with murder in the second degree, and notwithstanding the Assistant District Attorney’s misstatement at defendant’s arraignment on the felony complaint, the District Attorney concedes that defendant’s case was being investigated as a potential first degree murder case, i.e., a case for which the death penalty might be sought. As such, either the Capital Defender, the Legal Aid Society’s Capital Defense Unit, or an attorney belonging to the Capital Defender’s assigned counsel panel should have been appointed to represent defendant, pursuant to Judiciary Law § 35-b. Nevertheless, because defendant was provided with assigned counsel who was qualified to handle murder cases, and because the District Attorney corrected the misstatements and notified the Capital Defender so that the assigned counsel and the Capital Defender could consult on defendant’s case and advise him on his right to testify, the court finds that defendant’s right to counsel and his right to testify in the Grand Jury were not prejudiced.
Defendant complains that, “[a]t no time did the District Attorney formally advise the Court that [defendant’s] case was potentially a capital case as they are required to do under Judiciary Law section 35-b,” adding that, “[t]his failure, even if inadvertent, detrimentally affected the representation of [defendant] in that he did not have qualified counsel who had been specifically trained to handle potential capital cases.” What, precisely, is meant by defendant’s contention that the prosecutor was obligated to “formally advise” the court is left unexplained, but there appears to be no dispute that the Grand Jury Assistant corrected the earlier misstatements about the nature of defendant’s case so that the Judge in AP-1 could have acted to assign capital counsel if the Judge determined that the situation so warranted. Under the law, the District Attorney was not under any affirmative duty to seek the assignment to the case of counsel prescribed by Judiciary Law § 35-b; the law only requires the District Attorney to inform the court, upon the Judge’s inquiry, as to whether the case is being investigated as a potential first degree murder case. It is for the court to determine whether to appoint the Capital Defender. (See, Judiciary Law § 35-b [1].) While it is troubling to this court and, to say the least, embarrassing to the District Attorney that two Judges as well as assigned counsel were *597 given incorrect information initially, there is no reason to believe that the misrepresentations were calculated to mislead those Judges or to deprive defendant of his rights. Under the circumstances, the initial failure to advise the court and assigned counsel that the case was a potential capital one did not have an adverse impact on defendant’s right to counsel or his right to testify in the Grand Jury.
Defendant’s claim that he was deprived of “qualified counsel who had been specifically trained to handle potential capital cases” is simply not substantiated by the facts. While the preference in potential capital cases is to assign the Capital Defender, private counsel who have been qualified to represent capital defendants under criteria developed by the Capital Defender, or a Legal Aid Society or Public Defender office designated by the Capital Defender, the law expressly provides that counsel qualified to handle murder cases pursuant to County Law article 18-B may be assigned if the other designated counsel are not available. (See, Judiciary Law § 35-b [2].) Thus, the law recognizes that the type of counsel actually assigned to represent defendant in this case — an attorney qualified to be assigned to murder cases pursuant to County Law article 18-B — is qualified to represent capital defendants. While it is true that the letter of the Judiciary Law was not followed in this case, insofar as defendant received homicide-qualified, County Law article 18-B assigned counsel even though the preferred types of capital counsel were not unavailable, this technical violation did not affect defendant’s substantive rights.
Not only did defendant receive assigned counsel who was qualified to handle murder cases, and thus qualified by law to represent capital defendants, but his attorney consulted with the Capital Defender about the case, and specifically about defendant’s right to testify in the Grand Jury. Indeed, it appears that if the need existed, the Capital Defender, who had been made aware of the pending Grand Jury proceeding by the District Attorney and had consulted with assigned counsel, and who was present on October 22 when defendant’s case was before the Judge in AP-1, could have petitioned the court to appoint capital counsel to join assigned counsel in representing defendant, pursuant to Judiciary Law § 35-b (7), which expressly gives the Capital Defender the power to “provide or arrange to provide temporary legal representation to the defendant.” (Judiciary Law § 35-b [7].) It is a reasonable assumption that, having consulted with assigned counsel about the case, and counsel having determined in consultation with *598 defendant that he would not exercise his right to testify in the Grand Jury, the Capital Defender did not see the need to formally relieve assigned counsel at that point.[7] At any rate, assigned counsel and defendant had the benefit of the Capital Defender’s specialized knowledge and advice.
Notwithstanding the fact that he received the assistance of competent assigned counsel and the advice of the Capital Defender, defendant alleges that he was prejudiced because the following actions were not taken by assigned counsel: “waiving the time limit under C.P.L. section 180.80 to allow more time to investigate the case and prepare [defendant] to testify; seeking appointment of an expert to examine [defendant] and testify as to his emotional state at the time of the offense; seeking disclosure from the District Attorney of mitigating evidence which could cause the Grand Jury not to indict for Murder in the First Degree; seeking that the District Attorney instruct the Grand Jury with respect to extreme emotional disturbance; seeking that the District Attorney instruct the Grand Jury with respect to its power to exercise mercy; and asserting [defendant’s] right to privacy so that the District Attorney does not improperly subpoena privileged material of [defendant’s] for use in the Grand Jury or at trial.” (See, defendant’s reply to People’s opposition to motion, at 3.) Defendant does not specify why these alleged failings deprived him of effective assistance of counsel or affected his decision whether to testify in the Grand Jury. Moreover, counsel cannot be considered ineffective for failing to seek disclosure of mitigating evidence; requesting that the prosecutor instruct the Grand Jury on extreme emotional disturbance; or requesting that the prosecutor instruct the Grand Jury on its “mercy function.” There is no authority for the proposition that defendant is entitled to such preindictment discovery or that the prosecutor is required to so charge the Grand Jury, even in a potential capital case. (See generally, People v Hale, 167 Misc 2d 872, 875 [Sup Ct, Kings County 1996]; People v Cajigas, 174 Misc 2d 472, 479 [Westchester County Ct 1997].) In any event, it is paradoxical for defendant to claim that any of the above-listed alleged failures were owing to the fact that he was not represented by the Capital Defender, since the record reflects that the Capital Defender consulted with assigned counsel during the pending Grand Jury action. Consequently, there is no basis for conclud *599 ing that counsel was ineffective for not undertaking all of the actions enumerated by defendant.
Therefore, and for the foregoing reasons, defendant’s motion is denied.

. Initially, defendant also claimed that he did not receive adequate notice of the scope of the Grand Jury proceedings. It appears that this claim was based on his mistaken belief that the District Attorney, at all times prior to the voting of the indictment, either denied that the Grand Jury would be considering the charge of first degree murder or refused to confirm or deny that the Grand Jury would be considering that charge. Since it has come to light that, in fact, both the Capital Defender and assigned counsel were made aware that the Grand Jury investigation would encompass the charge of first degree murder, defendant has apparently abandoned this claim.

. Affirmation in opposition to defendant’s motion, at 2.

. CPL 180.80 provides that a defendant may not be held in custody pending indictment for more than 120 hours from the time of arrest, unless a Saturday, Sunday, or holiday falls within the period of custody, in which case the time limitation is 144 hours. (See, CPL 180.80.)

. Affirmation in opposition to defendant’s motion, at 2.

. Affirmation in opposition to defendant’s motion, at 2.

. See, affirmation in opposition to defendant’s motion, at 2.

. This conclusion is bolstered by the AP-1 court file notation indicating, “Capital Defender was here earlier to appoint — he left.”